UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2005 OCT 14  P 3: 21

U.S. DISTRICT COURT
DISTRICT OF MASS.

CHARLES BRETT, BUILDING )
INSPECTOR OF TOWN OF HAMILTON, )
)
Plaintiff, )
)
v. ) No. CV-05-11542-RGS
)
IRINA V. TEMKINA, )
)
Defendant. )

## DEFENDANT'S ANSWER AND COUNTERCLAIM

## ANSWER

### PARTIES

1. Admitted, on information and belief.

2. Admitted, on information and belief.

3. Denied. Further answering, defendant avers that she resides at 125 Neck Road, Box 4017, Old Lyme, Connecticut.

### JURISDICTION

4. Denied.

5. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph 5 and calls upon the plaintiff to prove the same.

6. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph 6 and calls upon the plaintiff to prove the same.

### FACTS

7. Admitted.

8. Admitted.

9. Admitted, that the structure on the Property consists of a single family, split ranch
   dwelling. Denied, that the structure presently has an attached garage. Further answering,
   defendant avers that the lower level of the Property, including an attached garage, was
   converted into an office/workshop in May 1999, by virtue of Hamilton
   Building/Occupancy permit B99-33.

10. Admitted.

11. Admitted, on information and belief.

12. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph
    12 and calls upon the plaintiff to prove the same.

13. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph
    13 and calls upon the plaintiff to prove the same.

14. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph
    14 and calls upon the plaintiff to prove the same.

15. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph
    15 and calls upon the plaintiff to prove the same.

16. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph
    16 and calls upon the plaintiff to prove the same.

17. Denied. Further answering, defendant avers that the letter speaks for itself.

18. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph
    18 and calls upon the plaintiff to prove the same. Further answering, defendant avers that,
    at times relevant to this complaint, the Hamilton Police arrived at the Property on
    numerous occasions at the behest of the plaintiff. On those occasions, the Hamilton

Police engaged in a plethora of illegal conduct, including physically ejecting defendant, her son, Elliott Tiomkin, and her elderly mother, Ninel Temkina, from the Property, placing the defendant in custody and interrogating her, and charging the defendant and her son with breaking and entering as a result of their entry onto the Property with a plumber to conduct repairs.

19. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph 19 and calls upon the plaintiff to prove the same. Further answering, defendant avers that, at times relevant to this complaint, the plaintiff has threatened to turn off water service to the Property to retaliate against the defendant for alleged "zoning violations," communicated this threat in writing to the defendant, see Exhibit E to Defendant's Counterclaim, and eventually did shut off water service to the Property to retaliate against the defendant for alleged "zoning violations."

20. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph 20 and calls upon the plaintiff to prove the same.

21. Admitted.

22. Denied. Further answering, defendant avers that (a) no federal, state, and local, prohibitions against multiple electric meters in single family dwellings exist; (b) that defendant did not intend to create a multi-family dwelling; (c) that defendant had a justification for inquiring about the installation of secondary electric service in the lower level office/workshop and that justification had no connection to the creation of a multi-family dwelling; (d) that plaintiff's secretary, Deb Paskowski, informed Mr. Tiomkin that the secondary electric service would be permitted once a proper application was filed with the Electrical Inspector; (e) that defendant never filed such an application or

3

installed secondary electric service in the lower level office/workshop.

23. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph 23 and calls upon the plaintiff to prove the same.

24. Denied. Further answering, defendant avers that no permits are required for ordinary repairs of existing systems and that no permits were required to repair any of the "items identified in the August 19, 2004 letter." See 780 CMR 110.3(4); 248 CMR 3.05(1)(c); M.G.L. c. 143 § 3L. Nor did the plaintiff state in his August 19, 2004 letter that any permits were required to repair any of the alleged defects.

25. Admitted, that, in the spring of 2005, defendant placed advertisements in the Salem Evening News' Houses for Rent and Apartments for Rent sections, all with respect to the lease of the residential unit at the property, either on its own or in conjunction with the lower level office/workshop. The interpretation being placed upon the advertisements by the plaintiff is denied.

26. Admitted.

27. Admitted. Further answering, defendant avers that (a) Matthew Carter is Mr. Baker's brother; (b) the lease with Mr. Carter for the lower level office/workshop specified Mr. Carter was to "maintain a workshop on the premises."

28. Denied.

29. Denied.

30. Admitted, that the lower level **office/workshop** is accessible only through the rear of the Property and that there is no access between the lower level office/workshop and the residential unit. Denied, that the lower level office/workshop is an "apartment."

31. Denied. Further answering, defendant avers that the letter speaks for itself, and that **none**

4

of the violations alleged in the August 19, 2004 letter were alleged in the May 19, 2005 letter.

## COUNT I–VIOLATION OF HAMILTON ZONING BY-LAW

32. Defendant incorporates her responses to the allegations of paragraphs 1-31 as if stated herein.

33. Admitted. Further answering, defendant avers that the Property was not so rented.

34. Denied. Further answering, defendant avers that "leases of the Property as two separate units each with their own separate cooking facilities" is not a violation of the Hamilton zoning by-law where (a) both units were approved for occupancy; (b) defendant leased one unit as a residential unit and the other unit as a non-residential unit; and (c) where the Property was not occupied by "more than one household."

35. Denied. Further answering, defendant avers that the letter speaks for itself.

36. Admitted that defendant executed separate leases for the residential unit and the non-residential office/workshop. Any and all remaining allegations in Paragraph 36 are denied. Further answering, defendant avers that (a) it is not clear what "such rental" means; (b) the Hamilton zoning by-law does not govern private lease agreements; (c) the zoning by-law only prohibits occupancy of a single family dwelling by "more than one household"; and (d) the defendant's lease of the residential unit to the Bakers and the defendant's concurrent non-residential lease of the lower level office/workshop to Matthew Carter, Mr. Baker's brother, does not evidence a violation of the zoning by-law.

37. Denied.

38. Admitted that the Hamilton zoning by-law so provides. Denied that this provision is enforceable in this proceeding.

39. Denied.

40. Denied.

## COUNT II–VIOLATION OF STATE BUILDING CODE

41. Defendant incorporates her responses to the allegations of paragraphs 1-40 as if stated herein.

42. Admitted. Further answering, defendant avers that no permits are required for ordinary repairs of existing systems and that no permits were required to repair any of the "items identified in the August 19, 2004 letter." See 780 CMR 110.3(4); 248 CMR 3.05(1)(c); M.G.L. c. 143 § 3L. Nor did the plaintiff state in his August 19, 2004 letter that any permits were required to repair any of the alleged defects.

43. Defendant is without sufficient knowledge to admit or deny the allegations in paragraph 43 and calls upon the plaintiff to prove the same. Further answering, defendant avers that the August 19, 2004 letter did not cite any provision of the State Building Code. The August 19, 2004 letter was unduly and unreasonably vague, and provided defendant with no notice or opportunity to remedy any alleged defects.

44. Admitted, on belief and information.

45. Denied.

46. Denied. Further answering, defendant avers that the August 19, 2004 letter did not cite any provision of the State Building Code. The August 19, 2004 letter was unduly and unreasonably vague, and provided defendant with no notice or opportunity to remedy any alleged defects.

47. Denied.

48. Denied.

Paragraphs 1-7 of the demand constitute a prayer for relief to which no response is required. To the extent that this portion of the Complaint may be construed to require a response, the defendant admits that, pursuant to the Hamilton zoning by-law, no more than one **household** may **reside** at the property. The remaining averments are denied.

## COUNTERCLAIM

### I. PARTIES

1. Plaintiff-in-Counterclaim Irina V. Temkina is a natural person, domiciled at 125 Neck Road, Box 4017, Old Lyme, County of New London, Connecticut. Plaintiff-in-Counterclaim is a citizen of the United States and the State of Connecticut.

2. Putative Plaintiff-in-Counterclaim Elliott N. Tiomkin is a natural person, domiciled at 125 Neck Road, Box 4017, Old Lyme, County of New London, Connecticut. Plaintiff-in-Counterclaim is a citizen of the United States and the State of Connecticut.

3. Putative Defendant-in-Counterclaim Town of Hamilton is a municipal subdivision of the Commonwealth of Massachusetts, with its offices at 577 Bay Road, Hamilton, County of Essex, Massachusetts.

4. Defendant-in-Counterclaim Charles Brett is a natural person, with his place of business at 577 Bay Road, Hamilton, County of Essex, Massachusetts. Defendant-in-Counterclaim is employed by the Town of Hamilton as a building inspector and zoning enforcement officer. Defendant-in-Counterclaim is a citizen of the United States and the Commonwealth of Massachusetts.

### II. JURISDICTION

5. Plaintiffs-in-Counterclaim are citizens of the State of Connecticut and Defendants-in-Counterclaim are (a) citizens of the Commonwealth of Massachusetts; and (b) a

municipal subdivision of the Commonwealth of Massachusetts. The matter in

controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §

1332. Consequently, this Court has original jurisdiction over this matter.

## III. FACTS

### Plaintiffs' Allegations of Anti-Semitism and Retaliation

6. In September 1998, Mr. Tiomkin, Ms. Temkina's son, was a student at the Hamilton-

   Wenham Regional High School ["High School"], the public school in Hamilton,

   Massachusetts.

7. In a formal complaint to the high school administration, Mr. Tiomkin and Ms. Temkina

   alleged that Matthew Gauron, a physical education teacher at the high school, directed

   anti-Semitic slurs at Mr. Tiomkin.

8. The high school administration failed to investigate Mr. Tiomkin's complaint and took no

   disciplinary action against Mr. Gauron.

9. Shortly thereafter, and in retaliation for Mr. Tiomkin's complaint, Christopher Rice, the

   Assistant Principal of the Hamilton-Wenham Regional High School, barred Mr. Tiomkin

   from attending the high school. Mr. Rice's pretext for barring Mr. Tiomkin from

   attending the high school was that Mr. Tiomkin was not residing in Hamilton, and was

   consequently ineligible to attend the high school.

10. Mr. Tiomkin and Ms. Temkina appealed Mr. Rice's decision to the Superintendent of the

    Hamilton-Wenham Regional School District, Dennis DeSalvo. Mr. Tiomkin and Ms.

    Temkina alleged that since Ms. Temkina was in the process of purchasing a home in

    Hamilton, District policy permitted Mr. Tiomkin to attend the high school.

11. While Mr. DeSalvo reviewed Mr. Rice's decision, Mr. Tiomkin was physically prevented

from attending his classes at the high school.

12. Approximately two weeks after Mr. Tiomkin was barred from attending the high school, Mr. DeSalvo overturned Mr. Rice's decision and reinstated Mr. Tiomkin as a student at the high school.

13. Upon Mr. Tiomkin's return to the high school, Mr. Rice entered administrative failures for all courses on Mr. Tiomkin's transcript. Mr. Tiomkin had not failed any courses. Mr. Rice based his decision to enter the administrative failures on Mr. Tiomkin's two week absence, which was caused by Mr. Rice's decision to bar Mr. Tiomkin from attending the high school because of Mr. Tiomkin's residency.

14. In March 1999, Mr. Tiomkin withdrew from the high school, and graduated, fourth in his class, from the Manchester-by-the-Sea High School, Manchester-by-the-Sea, Massachusetts in June 2000. Mr. Tiomkin graduated from Boston College in May 2003, and is presently a third year student in the top quintile of his class at the University of Connecticut School of Law.

15. In May 2000, Mr. Tiomkin and Ms. Temkina filed a complaint against Mr. Rice, Mr. Gauron, and the Hamilton-Wenham Regional School District with the Massachusetts Commission Against Discrimination ["MCAD"]. Mr. Tiomkin and Ms. Temkina alleged that the Mr. Gauron had made anti-Semitic slurs and that Mr. Rice and the high school administration failed to investigate Mr. Tiomkin's complaint, took no disciplinary action against Mr. Gauron, and retaliated against Mr. Tiomkin by excluding him from the high school and entering administrative failures on his transcript.

16. On March 25, 2002, the Boston Globe reported that Town of Hamilton selectmen refused "to sign a pledge against hatred, already approved in 54 Massachusetts communities."

9

According to the article, the selectmen "are the first municipal leaders in the state to turn down the ["No Place for Hate"] program designed by the Anti-Defamation League, a Jewish organization that battles anti-Semitism."

17. Candace Wheeler, Hamilton's town manager, is quoted in the Globe article as justifying the selectmen's refusal to participate in the ADL program: "The board members are what I'd call strict constructivists [sic]," she said. "[t]hey don't think it's their job to approve anybody's private agenda."

18. The incident garnered national attention. Hamilton eighth grader Hannah Hoy, who first suggested to the Selectmen that her town adopt such a program, was interviewed on the March 28, 2002 Today Show.

19. The incident also brought to light other instances of tolerance of anti-Semitic behavior by Hamilton officials. The Globe interviewed Hamilton resident Dr. George Beilin, who contended his son was the target of an anti-Semitic slur.

20. In April 1999, Ms. Temkina and Mr. Tiomkin moved from their home at 521 Bridge Street, South Hamilton, and began renting out the home.

21. Thereafter, and in retaliation for Ms. Temkina's and Mr. Tiomkin's filing of the MCAD complaint, Mr. Brett organized a campaign to harass and intimidate Ms. Temkina and Mr. Tiomkin, prevent them from renting their home and drive them out of the Town of Hamilton.

22. Specifically, Mr. Brett utilized Town of Hamilton facilities to organize meetings for the purpose of discussing Ms. Temkina and Mr. Tiomkin. At these meetings, Mr. Brett stated that Ms. Temkina and Mr. Tiomkin were "unwelcome in the neighborhood" and discussed means of preventing them from renting their home and expelling them from the

Town.

23. At those meetings, Mr. Brett also announced his intention to utilize the police department and the enforcement of local ordinances to harass and intimidate Ms. Temkina and Mr. Tiomkin, prevent them from renting their home, and drive them out of the Town of Hamilton.

### 2004 Incidents

24. 521 Bridge Street, South Hamilton, is a single family four bedroom home with an attached office/workshop, assessed by the Town of Hamilton at $450,000.

25. Mr. Brett sent a letter dated August 19, 2004 to Ms. Temkina and Ms. Tiomkin. The letter alleged that 521 Bridge Street, South Hamilton "is in violation of several by-law and life safety codes."

26. Mr. Brett did not cite any "by-law and life safety codes" in his August 19, 2004 letter.

27. Mr. Brett specified the following alleged violations in his August 19, 2004 letter:

> "Means of Egress (Blocked)
> Smoke Detectors
> Water Supply
> Electrical Violations
> Hand Rails by Main Egress
> Number of Bedrooms exceeds Title V System
> Illegal Apartment, No Special Permit Obtained from Zoning Board of Appeals
> No Anti-Scald Valve in Upstairs Apartment
> No GFI Outlets in Bathrooms with Hole Cut in Wall Next to Outlet
> Non Payment of Municipal Tax and Water Bills"

28. The August 19, 2004 letter was unduly and unreasonably vague, and did not state violations of any local, state or federal law or ordinance capable of being corrected.

29. Mr. Brett's office had no authority to enforce "payment of municipal tax and water bills," or any of the other alleged areas of concern, with the exception of the alleged illegal apartment, blocked means of egress and unspecified handrail concerns.

30. The August 19, 2004 letter provided Ms. Temkina and Mr. Tiomkin with no notice or opportunity to remedy any alleged defects.

31. Instead, the August 19, 2004 letter stated: "[i]t is my intention…to issue a Cease & Desist order, and to have the premises vacated by next Tuesday, August 24, 2004."

32. Mr. Brett had no authority to order "the premises vacated" because of "non- payment of municipal tax and water bills" or any of the other alleged areas of concern.

33. The August 19, 2004 letter stated: "I have advised your tenants to withhold payment of rent until this matter is concluded."

34. On August 19, 2004 Mr. Brett also sent a letter to the Ms. Temkina's and Mr. Tiomkin's tenants, ordering them to stop paying rent. Mr. Brett's correspondence is attached hereto as Exhibit A.

35. Mr. Brett had no authority to order Ms. Temkina's and Mr. Tiomkin's tenants to stop paying rent.

36. On August 24, 2004, Mr. Brett posted a large orange sign on the front of the dwelling at 521 Bridge Street, South Hamilton. The sign stated that the property had been "condemned."

37. The dwelling at 521 Bridge Street, South Hamilton was not eligible for condemnation pursuant to statute.

38. The following day, Mr. Brett removed the sign.

39. On or about August 30, 2004, Ms. Temkina arrived at the Hamilton Police Station. There, Ms. Temkina met Officer Wallace.

40. Ms. Temkina stated that she had an emergency: her tenants were not permitting her to enter her property to repair a leak. Ms. Temkina stated that the said leak was causing

flooding. Ms. Temkina requested that Officer Wallace accompany her to the home, arrange for an emergency entry, and make out a police report.

41. Officer Wallace refused to take any action or make out a police report. Instead, she placed Ms. Temkina in custody and, together with Detective Trepanier, proceeded to interrogate her.

42. Detective Trepanier and Officer Wallace interrogated Ms. Temkina concerning her entry onto her property with a plumber the preceding day.

43. Detective Trepanier and Officer Wallace had no legitimate reason to place Ms. Temkina in custody and subject Ms. Temkina to custodial interrogation.

44. Detective Trepanier proceeded to file applications for criminal complaint against Ms. Temkina and Mr. Tiomkin, with the Ipswich District Court, charging breaking and entering.

45. Detective Trepanier alleged that Ms. Temkina and Mr. Tiomkin entered their property with a plumber to conduct plumbing repairs on August 29, 2005, after giving their tenants due notice of their entry

46. Detective Trepanier had no legitimate reason to file applications for criminal complaint.

47. A clerk-magistrate of the Ipswich District Court denied Detective Trepanier's applications on October 14, 2004. Ipswich District Court ruling is attached hereto as Exhibit B.

48. Officer Wallace proceeded to impound and tow Ms. Temkina's vehicle, a 1999 Volvo, claiming that the vehicle was unregistered.

49. Officer Wallace also issued a citation to Ms. Temkina for operating an unregistered vehicle.

50. Officer Wallace had no legitimate reason to impound Ms. Temkina's vehicle or issue a citation to Ms. Temkina.

51. A clerk-magistrate of the Ipswich District Court dismissed Officer Wallace's citation on October 14, 2004.

### 2005 Incidents

52. In February 2005, Mr. Brett discovered that Ms. Temkina had executed a contract to rent the dwelling unit at 521 Bridge Street, South Hamilton to Stacy Bowers.

53. Ms. Bowers was receiving assistance through the Section 8 Housing Choice Voucher Program.

54. The dwelling unit at 521 Bridge Street, South Hamilton had passed a Section 8 Housing Quality Standards Inspection in January 2005, and Ms. Temkina had executed a lease with Ms. Bowers and a Housing Assistance Payments Contract with the North Andover Housing Authority.

55. On Mr. Brett's instructions, Deb Paskowski, Mr. Brett's assistant, contacted the North Andover Housing Authority, falsely stated that the dwelling unit at 521 Bridge Street, South Hamilton was in violation of the State Building Code and the Hamilton zoning by-law, and urged the North Andover Housing Authority to repudiate its contract with Ms. Temkina. Facsimile cover page from Ms. Paskowski is attached hereto as Exhibit C.

56. The North Andover Housing Authority did repudiate its contract with Ms. Temkina.

57. In May 2005, Mr. Brett discovered that Ms. Temkina had executed a contract to rent the dwelling unit at 521 Bridge Street, South Hamilton to Rhonda Baker, her spouse Shawn Baker, and Mr. Baker's brother Matthew Carter.

58. Ms. Baker was receiving assistance through the Section 8 Housing Choice Voucher

14

Program.

59. The dwelling unit at 521 Bridge Street, South Hamilton had passed a Section 8 Housing
    Quality Standards Inspection in February 2005, Ms. Temkina had executed a lease with
    Ms. Baker and a Housing Assistance Payments Contract with the Beverly Housing
    Authority, and the family had resided in the dwelling unit for over two months.

60. On Mr. Brett's instructions, Ms. Paskowski contacted the Beverly Housing Authority,
    which administered the Bakers' Section 8 Voucher, falsely stated that the dwelling unit at
    521 Bridge Street, South Hamilton was in violation of the State Building Code and the
    Hamilton zoning by-law, and urged the Beverly Housing Authority to breach its contract
    with Ms. Temkina. Facsimile cover page from Ms. Paskowski is attached hereto as
    Exhibit D.

61. The Beverly Housing Authority did breach its contract with Ms. Temkina.

62. Mr. Brett mailed a letter dated May 19, 2005 to Ms. Temkina. The letter alleged none of
    the alleged state code violations reported in the August 19, 2004 letter. In fact, only one
    building code violation was alleged in the May 19, 2005 letter: a set of defective front
    steps.

63. Mr. John Jacobi, a health agent of the Hamilton Board of Health, mailed a letter dated
    May 19, 2005 to Ms. Temkina at the behest of Mr. Brett. The communication stated that
    the town intended to "terminat[e] all utilities" to 521 Bridge Street, South Hamilton
    because Ms. Temkina allegedly violated a Hamilton zoning by-law. Communication is
    attached hereto as Exhibit E.

64. On or about May 23, 2005, Mr. Brett did cause water service to be disconnected at 521
    Bridge Street, South Hamilton.

65. Soon thereafter, water service was restored.

66. On or about July 6, 2005, Mr. Brett filed the instant action against Ms. Temkina in the
    Essex Superior Court, alleging violations of the State Building Code and the Hamilton
    zoning by-law.

67. Mr. Brett had no legitimate reason to file the complaint against Ms. Temkina. Mr. Brett
    knew that the defects alleged in his August 19, 2004 letter, and which served as the basis
    for his complaint, were not present. Mr. Brett also knew that 521 Bridge Street, South
    Hamilton was occupied by one household, and thus was not in violation of the by-law
    limiting the occupancy of single family dwellings.

68. In August 2005, Ms. Temkina filed suit against the Beverly Housing Authority and Ms.
    Baker with the Northeast Housing Court, seeking money damages.

69. Neither Mr. Brett nor the Town of Hamilton was a party to or otherwise possessed
    standing in the Northeast Housing Court action.

70. Nevertheless, Donna Brewer MacKenna, plaintiff's counsel in the instant action, has
    appeared for the Beverly Housing Authority at every scheduled event in the Northeast
    Housing Court action. Ms. MacKenna had not entered an appearance in that action.
    However, she has, on several occasions, argued on behalf of the Beverly Housing
    Authority.

71. On August 2, 2005, Ms. Temkina, Mr. Tiomkin, and Ms. Temkina's mother, Ninel
    Temkina, arrived at 521 Bridge Street, South Hamilton in order to paint a bathroom wall
    and inspect a light fixture, after having given their tenants due notice of their entry.

72. Almost immediately, Ms. Baker, the tenant, telephoned the Hamilton Police Department.

73. Officer Wallace and Officer Hatfield arrived.

74. Officer Wallace and Officer Hatfield ejected Ms. Temkina and Mr. Tiomkin from the dwelling unit, and did not permit them to re-enter.

75. Officer Wallace and Officer Hatfield forced Ms. Temkina and Mr. Tiomkin to give up their keys to the dwelling unit to Rhonda Baker.

76. Officer Wallace and Officer Hatfield ejected Ms. Temkina and Mr. Tiomkin from the office/workshop, and did not permit them to re-enter, although Mr. Tiomkin presented the officers with a Northeast Housing Court judgment granting possession of the office/workshop to Ms. Temkina and Mr. Tiomkin.

77. Officer Wallace and Officer Hatfield forced Ms. Temkina and Mr. Tiomkin to give up their keys to the office/workshop to Rhonda Baker, although Mr. Tiomkin presented the officers with a Northeast Housing Court judgment granting possession of the office/workshop to Ms. Temkina and Mr. Tiomkin.

78. Upon ejecting Ms. Temkina and Mr. Tiomkin from their property, Officer Hatfield stated that, irregardless of the Northeast Housing court judgment, "the building inspector has told you that you are not allowed on this property."

## FIRST CLAIM FOR RELIEF
### Tortious Interference With Advantageous Business Relations

79. Paragraphs 1-78 are repeated and realleged herein.

80. In their real estate business, plaintiffs-in-counterclaim have maintained active business relations with past and present customers and have derived a constant stream of business from new customers.

81. Defendants-in-counterclaim knew of the plaintiffs'-in-counterclaim business relations.

82. By (a) sending communications to the plaintiffs'-in-counterclaim tenants in which the tenants were ordered to stop payment of rent, without authority to do so; (b) posting a

17

notice of "condemnation" on the plaintiffs'-in-counterclaim property, without legitimate reason to do so; (c) bringing and prosecuting a groundless and baseless application for criminal complaint against the plaintiffs-in-counterclaim; (d) communicating false information to the North Andover Housing Authority and urging the North Andover Housing Authority to repudiate its contract with the plaintiff-in-counterclaim Temkina; (e) communicating false information to the Beverly Housing Authority and urging the Beverly Housing Authority to breach its contract with the plaintiff-in-counterclaim Temkina; (f) threatening to terminate utilities and ultimately terminating water service to the plaintiffs'-in-counterclaim property, all in retaliation for purported zoning violations; (g) bringing and prosecuting groundless and baseless litigation against the plaintiff-in-counterclaim Temkina alleging violations of the state building code and a local zoning by-law; (h) utilizing their municipal counsel to represent the Beverly Housing Authority and the plaintiffs'-in-counterclaim tenant; (i) wrongfully using the police to physically eject the plaintiffs-in-counterclaim from their property, and otherwise harassing and intimidating Ms. Temkina and Mr. Tiomkin and preventing them from renting their home, defendants-in-counterclaim have intentionally and tortiously interfered and continue to interfere with the plaintiffs'-in-counterclaim past, present, and future business dealings.

83. As a direct and proximate result of the defendants'-in-counterclaim actions and conduct, the plaintiffs-in-counterclaim suffered and continue to suffer economic loss.

### SECOND CLAIM FOR RELIEF
**Violation of the Fifth Amendment to the United States Constitution**

84. Paragraphs 1-83 are repeated and realleged herein.

85. By (a) sending communications to the plaintiffs'-in-counterclaim tenants in which the

tenants were ordered to stop payment of rent, without authority to do so; (b) posting a notice of "condemnation" on the plaintiffs'-in-counterclaim property, without legitimate reason to do so (c) bringing and prosecuting a groundless and baseless application for criminal complaint against the plaintiffs-in-counterclaim; (d) communicating false information to the North Andover Housing Authority and urging the North Andover Housing Authority to repudiate its contract with the plaintiff-in-counterclaim Temkina; (e) communicating false information to the Beverly Housing Authority and urging the Beverly Housing Authority to breach its contract with the plaintiff-in-counterclaim Temkina; (f) threatening to terminate utilities and ultimately terminating water service to the plaintiffs'-in-counterclaim property, all in retaliation for purported zoning violations; (g) bringing and prosecuting groundless and baseless litigation against the plaintiff-in-counterclaim Temkina alleging violations of the state building code and a local zoning by-law; (h) utilizing their municipal counsel to represent the Beverly Housing Authority and the plaintiffs'-in-counterclaim tenant; (i) wrongfully using the police to physically eject the plaintiffs-in-counterclaim from their property, and otherwise harassing and intimidating Ms. Temkina and Mr. Tiomkin, and preventing them from renting their home, defendants-in-counterclaim have taken private property without just compensation.

86. The defendants'-in-counterclaim actions and conduct have caused the plaintiffs'-in-counterclaim property to significantly diminish in value, and have otherwise worked a significant economic impact on the plaintiffs-in-counterclaim.

87. The defendants'-in-counterclaim actions and conduct have caused interference with the plaintiffs'-in-counterclaim investment backed expectations.

88. As a direct and proximate result of the defendants'-in-counterclaim actions and conduct,

the plaintiffs-in-counterclaim suffered and continue to suffer economic loss.

### THIRD CLAIM FOR RELIEF
#### Violation of United States Constitution, Article I, Section 10

89. Paragraphs 1-88 are repeated and realleged herein.

90. In their real estate business, plaintiffs-in-counterclaim have maintained active contractual relationships with government agencies, including the Beverly Housing Authority and the North Andover Housing Authority, and the Department of Housing and Urban Development.

91. By (a) sending communications to the plaintiffs'-in-counterclaim tenants in which the tenants were ordered to stop payment of rent, without authority to do so; (b) posting a notice of "condemnation" on the plaintiffs'-in-counterclaim property, without legitimate reason to do so (c) bringing and prosecuting a groundless and baseless application for criminal complaint against the plaintiffs-in-counterclaim; (d) communicating false information to the North Andover Housing Authority and urging the North Andover Housing Authority to repudiate its contract with the plaintiff-in-counterclaim Temkina; (e) communicating false information to the Beverly Housing Authority and urging the Beverly Housing Authority to breach its contract with the plaintiff-in-counterclaim Temkina; (f) threatening to terminate utilities and ultimately terminating water service to the plaintiffs'-in-counterclaim property, all in retaliation for purported zoning violations; (g) bringing and prosecuting groundless and baseless litigation against the plaintiff-in-counterclaim Temkina alleging violations of the state building code and a local zoning by-law; (h) utilizing their municipal counsel to represent the Beverly Housing Authority and the plaintiffs'-in-counterclaim tenant; (i) wrongfully using the police to physically eject the plaintiffs-in-counterclaim from their property, and otherwise harassing and

intimidating Ms. Temkina and Mr. Tiomkin, and preventing them from renting their home, defendants-in-counterclaim have utilized state and local law to substantially impair governmental contractual obligations.

92. The defendants'-in-counterclaim actions and conduct were not necessary or essential to achieve a significant and legitimate public purpose.

93. As a direct and proximate result of the defendants'-in-counterclaim actions and conduct, the plaintiffs-in-counterclaim suffered and continue to suffer economic loss.

### FOURTH CLAIM FOR RELIEF
#### Violation of 42 U.S.C. § 1983

94. Paragraphs 1-93 are repeated and realleged herein.

95. By retaliating against the plaintiffs-in-counterclaim for filing a discrimination complaint with the MCAD, by (a) sending communications to the plaintiffs'-in-counterclaim tenants in which the tenants were ordered to stop payment of rent, without authority to do so; (b) posting a notice of "condemnation" on the plaintiffs'-in-counterclaim property, without legitimate reason to do so (c) bringing and prosecuting a groundless and baseless application for criminal complaint against the plaintiffs-in-counterclaim; (d) communicating false information to the North Andover Housing Authority and urging the North Andover Housing Authority to repudiate its contract with the plaintiff-in-counterclaim Temkina; (e) communicating false information to the Beverly Housing Authority and urging the Beverly Housing Authority to breach its contract with the plaintiff-in-counterclaim Temkina; (f) threatening to terminate utilities and ultimately terminating water service to the plaintiffs'-in-counterclaim property, all in retaliation for purported zoning violations; (g) bringing and prosecuting groundless and baseless litigation against the plaintiff-in-counterclaim Temkina alleging violations of the state

building code and a local zoning by-law; (h) utilizing their municipal counsel to represent the Beverly Housing Authority and the plaintiffs'-in-counterclaim tenant; (i) wrongfully using the police to physically eject the plaintiffs-in-counterclaim from their property, and otherwise harassing and intimidating Ms. Temkina and Mr. Tiomkin, and preventing them from renting their home, defendants-in-counterclaim denied the plaintiffs-in-counterclaim, members of a protected class, equal protection of the laws.

96.  By retaliating against the plaintiffs-in-counterclaim for filing a discrimination complaint with the MCAD, by (a) sending communications to the plaintiffs'-in-counterclaim tenants in which the tenants were ordered to stop payment of rent, without authority to do so; (b) posting a notice of "condemnation" on the plaintiffs'-in-counterclaim property, without legitimate reason to do so (c) bringing and prosecuting a groundless and baseless application for criminal complaint against the plaintiffs-in-counterclaim; (d) communicating false information to the North Andover Housing Authority and urging the North Andover Housing Authority to repudiate its contract with the plaintiff-in-counterclaim Temkina; (e) communicating false information to the Beverly Housing Authority and urging the Beverly Housing Authority to breach its contract with the plaintiff-in-counterclaim Temkina; (f) threatening to terminate utilities and ultimately terminating water service to the plaintiffs'-in-counterclaim property, all in retaliation for purported zoning violations; (g) bringing and prosecuting groundless and baseless litigation against the plaintiff-in-counterclaim Temkina alleging violations of the state building code and a local zoning by-law; (h) utilizing their municipal counsel to represent the Beverly Housing Authority and the plaintiffs'-in-counterclaim tenant; (i) wrongfully using the police to physically eject the plaintiffs-in-counterclaim from their

22

property, and otherwise harassing and intimidating Ms. Temkina and Mr. Tiomkin, and preventing them from renting their home, defendants-in-counterclaim denied the plaintiffs-in-counterclaim the free exercise of their religion.

97.  By retaliating against the plaintiffs-in-counterclaim for filing a discrimination complaint with the MCAD, by (a) sending communications to the plaintiffs'-in-counterclaim tenants in which the tenants were ordered to stop payment of rent, without authority to do so; (b) posting a notice of "condemnation" on the plaintiffs'-in-counterclaim property, without legitimate reason to do so (c) bringing and prosecuting a groundless and baseless application for criminal complaint against the plaintiffs-in-counterclaim; (d) communicating false information to the North Andover Housing Authority and urging the North Andover Housing Authority to repudiate its contract with the plaintiff-in-counterclaim Temkina; (e) communicating false information to the Beverly Housing Authority and urging the Beverly Housing Authority to breach its contract with the plaintiff-in-counterclaim Temkina; (f) threatening to terminate utilities and ultimately terminating water service to the plaintiffs'-in-counterclaim property, all in retaliation for purported zoning violations; (g) bringing and prosecuting groundless and baseless litigation against the plaintiff-in-counterclaim Temkina alleging violations of the state building code and a local zoning by-law; (h) utilizing their municipal counsel to represent the Beverly Housing Authority and the plaintiffs'-in-counterclaim tenant; (i) wrongfully using the police to physically eject the plaintiffs-in-counterclaim from their property, and otherwise harassing and intimidating Ms. Temkina and Mr. Tiomkin, and preventing them from renting their home, defendants-in-counterclaim denied the plaintiffs-in-counterclaim due process of law.

98.   By retaliating against the plaintiffs-in-counterclaim for filing a discrimination
      complaint with the MCAD, by (a) sending communications to the plaintiffs'-in-
      counterclaim tenants in which the tenants were ordered to stop payment of rent, without
      authority to do so; (b) posting a notice of "condemnation" on the plaintiffs'-in-
      counterclaim property, without legitimate reason to do so (c) bringing and prosecuting a
      groundless and baseless application for criminal complaint against the plaintiffs-in-
      counterclaim; (d) communicating false information to the North Andover Housing
      Authority and urging the North Andover Housing Authority to repudiate its contract with
      the plaintiff-in-counterclaim Temkina; (e) communicating false information to the
      Beverly Housing Authority and urging the Beverly Housing Authority to breach its
      contract with the plaintiff-in-counterclaim Temkina; (f) threatening to terminate utilities
      and ultimately terminating water service to the plaintiffs'-in-counterclaim property, all in
      retaliation for purported zoning violations; (g) bringing and prosecuting groundless and
      baseless litigation against the plaintiff-in-counterclaim Temkina alleging violations of the
      state building code and a local zoning by-law; (h) utilizing their municipal counsel to
      represent the Beverly Housing Authority and the plaintiffs'-in-counterclaim tenant; (i)
      wrongfully using the police to physically eject the plaintiffs-in-counterclaim from their
      property, and otherwise harassing and intimidating Ms. Temkina and Mr. Tiomkin, and
      preventing them from renting their home, defendants-in-counterclaim otherwise violated
      the civil rights of the plaintiffs-in-counterclaim.

99.   The defendants-in-counterclaim acted under color of law.

100.  As a direct and proximate result of the defendants'-in-counterclaim actions and
      conduct, the plaintiffs-in-counterclaim suffered and continue to suffer economic loss.

## FIFTH CLAIM FOR RELIEF
### Malicious Prosecution

101. Paragraphs 1-100 are repeated and realleged herein.

102. Defendants-in-counterclaim brought and prosecuted an application for criminal
complaint against the plaintiffs-in-counterclaim alleging charges of breaking and entering

103. Defendants-in-counterclaim acted with malicious intent, namely to vex and trouble the
plaintiffs-in-counterclaim, and to prevent them from renting their home.

104. Defendants-in-counterclaim acted without probable cause. In fact, a clerk magistrate of
the Ipswich District Court found no probable cause for the institution of criminal
proceedings.

105. The criminal proceedings terminated in favor of the plaintiffs-in-counterclaim: the clerk
magistrate denied the application.

106. As a direct and proximate result of the defendants'-in-counterclaim actions and
conduct, the plaintiffs-in-counterclaim suffered and continue to suffer economic loss.

## SIXTH CLAIM FOR RELIEF
### Abuse of Process

107. Paragraphs 1-106 are repeated and realleged herein.

108. Defendants-in-counterclaim brought and prosecuted (a) an application for criminal
complaint against the plaintiffs-in-counterclaim alleging charges of breaking and
entering; and (b) litigation against the plaintiff-in-counterclaim Temkina alleging
violations of the state building code and a local zoning by-law.

109. Defendants-in-counterclaim acted with malicious intent, to vex and trouble the
plaintiffs-in-counterclaim, and to prevent them from renting their home.

110. Defendants-in-counterclaim used legal process to accomplish an ulterior or illegitimate

purpose, an end for which such process was not designed, namely to vex and trouble the plaintiffs-in-counterclaim, and to prevent them from renting their home.

111. As a direct and proximate result of the defendants'-in-counterclaim actions and conduct, the plaintiffs-in-counterclaim suffered and continue to suffer economic loss.

## SEVENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

112. Paragraphs 1-111 are repeated and realleged herein.

113. By (a) sending communications to the plaintiffs'-in-counterclaim tenants in which the tenants were ordered to stop payment of rent, without authority to do so; (b) posting a notice of "condemnation" on the plaintiffs'-in-counterclaim property, without legitimate reason to do so (c) bringing and prosecuting a groundless and baseless application for criminal complaint against the plaintiffs-in-counterclaim; (d) communicating false information to the North Andover Housing Authority and urging the North Andover Housing Authority to repudiate its contract with the plaintiff-in-counterclaim Temkina; (e) communicating false information to the Beverly Housing Authority and urging the Beverly Housing Authority to breach its contract with the plaintiff-in-counterclaim Temkina; (f) threatening to terminate utilities and ultimately terminating water service to the plaintiffs'-in-counterclaim property, all in retaliation for purported zoning violations; (g) bringing and prosecuting groundless and baseless litigation against the plaintiff-in-counterclaim Temkina alleging violations of the state building code and a local zoning by-law; (h) utilizing their municipal counsel to represent the Beverly Housing Authority and the plaintiffs'-in-counterclaim tenant; (i) wrongfully using the police to physically eject the plaintiffs-in-counterclaim from their property, and otherwise harassing and intimidating Ms. Temkina and Mr. Tiomkin, and preventing them from renting their

home, the defendants-in-counterclaim caused the plaintiffs-in-counterclaim severe emotional distress.

114. Defendants'-in-counterclaim foregoing actions and conduct were extreme and outrageous.

115. Defendants-in-counterclaim intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of their conduct.

116. As a direct and proximate result of the defendants'-in-counterclaim actions and conduct, the plaintiffs-in-counterclaim suffered and continue to suffer economic loss.

## EIGHTH CLAIM FOR RELIEF
### Negligence

117. Paragraphs 1-116 are repeated and realleged herein.

118. Defendants-in-counterclaim owed legal duties to the plaintiffs-in-counterclaim.

119. These duties included maintaining water service to the plaintiffs'-in-counterclaim property, reasonably assisting the plaintiffs-in-counterclaim in police emergencies, and refraining from unlawfully ejecting the plaintiffs-in-counterclaim from their property.

120. By the foregoing actions and conduct, the defendants-in-counterclaim breached those duties.

121. As a direct and proximate result of the defendants'-in-counterclaim actions and conduct, the plaintiffs-in-counterclaim suffered and continue to suffer economic loss.

## IV. PRAYER FOR RELIEF

WHEREFORE, the plaintiffs-in-counterclaim pray for:

1. A permanent injunction preventing the defendants-in-counterclaim from:

  a. Interfering with the plaintiffs'-in-counterclaim utility services;

    b.  Posting "condemnation" or other such notices on the plaintiffs'-in-counterclaim property;

    c.  Ejecting the plaintiffs-in-counterclaim from their property or preventing the plaintiffs-in-counterclaim from entering onto their property;

    d.  Ordering the plaintiffs'-in-counterclaim tenants to quit paying rent;

    e.  Otherwise interfering with the plaintiffs'-in-counterclaim contractual and business relations;

2. Damages in the amount to be determined at trial, including compensatory, punitive, and special damages;

3. Interest;

4. Costs;

5. Such other and further relief as the Court deems just and proper;

## JURY DEMAND

The defendants/plaintiffs-in-counterclaim demand a trial by jury as to all claims so triable.

Dated: September 29, 2005

                        DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM,

                        Irina V. Temkina
                        125 Neck Road
                        Old Lyme, CT 06371
                        (860) 597-3020 (telephone/facsimile)
                        irina.temkina@uconn.edu

                        Elliott N. Tiomkin
                        125 Neck Road
                        Old Lyme, CT 06371
                        (860) 597-3020 (telephone/facsimile)
                        tiomkine@yahoo.com

# EXHIBIT A



**Town of Hamilton**
**Building Department**
**577 Bay Road**
**Hamilton, MA 01982**
**978-468-5585**

August 19, 2004

Mr. & Mrs. Brian Shatford
521 Bridge Street
So. Hamilton, MA 01982

Dear Mr. & Mrs. Shatford,

Due to the condition of the dwelling and the serious code violations that exist, we have advised you to stop payment of your rent.

Hopefully this letter will aid you in your request for the bank.

Sincerely,

Charles Brett

Charles Brett
Inspector of Buildings
Zoning Enforcement Officer

Cc:    Irina Temkina
       Elliot Temkin



# EXHIBIT B

| APPLICATION FOR COMPLAINT | NUMBER | Trial Court of Massachusetts |
|---|---|---|
| ☒ ADULT    ☐ JUVENILE | ` | District Court Department |

COURT DIVISION

☐ ARREST    ☐ HEARING    ☒ SUMMONS    ☐ WARRANT

THE WITHIN NAMED COMPLAINANT REQUESTS THAT A COMPLAINT ISSUE AGAINST THE WITHIN NAMED DEFENDANT, CHARGING SAID DEFENDANT WITH THE OFFENSE(S) LISTED BELOW.

IPSWICH DISTRICT
188 STATE ST
NEWBURYPORT. MA. 01950

| DATE OF APPLICATION | DATE OF OFFENSE 08/31/2004 | PLACE OF OFFENSE HAMILTON, MA |
|---|---|---|

| NAME OF COMPLAINANT DETECTIVE Stephen H Trepanier | NO | OFFENSE | G.L. AND SEC |
|---|---|---|---|

| ADDRESS AND ZIP CODE OF COMPLAINANT | | | |
|---|---|---|---|
| Hamilton Police Department 265 BAY ROAD HAMILTON. MA 01982 | 1. | B&E FOR MISDEMEANOR [266/16A] | 266 16A |
| | 2. | | |

| NAME, ADDRESS, AND ZIP CODE OF DEFENDANT | | |
|---|---|---|
| ELLIOTT TIOMKIN 5 NEWTON RD GLOUCESTER, MA. 01930 | 3. | |
| | 4. | |

| COURT USE ONLY → | A hearing upon this complaint application will be held at the above court address on | DATE OF HEARING 10/14/04 | TIME OF HEARING AT 2:30 pm | COURT USE ONLY ← |
|---|---|---|---|---|

## CASE PARTICULARS - BE SPECIFIC

| NO | NAME OF VICTIM Owner of property, person assaulted, etc | DESCRIPTION OF PROPERTY Goods stolen, what destroyed, etc | VALUE OR PROPERTY Over or under $250 | TYPE OF CONTROLLED SUBSTANCE OR WEAPON Marijuana, gun, etc |
|---|---|---|---|---|
| 1 | RENNICKS, DAWN M | | | |
| 2. | | | | |
| 3 | | | | |
| 4 | | | | |

OTHER REMARKS

OBTN: THAM205400194

SIGNATURE OF COMPLAINANT

## DEFENDANT IDENTIFICATION INFORMATION - Complete data below if known.

| DATE OF BIRTH 08/02/1982 | PLACE OF BIRTH RUSSIA | SOC. SECURITY NO. 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 | SEX M | RACE U | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|
| OCCUPATION | EMPLOYER/SCHOOL | MOTHER'S NAME (MAIDEN) TIOMKIN, IRENA | | | FATHER'S NAME | | | |

## ↓ COURT USE ONLY ↓

| DATE | DISPOSITION | AUTHORIZED BY |
|---|---|---|
| 10/14/04 | NO PROCESS TO ISSUE ☐ At request of complainant ☐ Complainant failed to prosecute ☑ Insufficient evidence having been presented | |
| | PROCESS TO ISSUE    TYPE OF PROCESS ☐ Sufficient evidence presented    ☐ Warrant ☐ Defendant failed to appear    ☐ Summons returnable | |
| | ☐ Continued to | |

COMMENTS

TRUE COPY
ATTEST:

| DC-CR2(5/89) | | COURT COPY (WHITE) |
|---|---|---|

| APPLICATION FOR COMPLAINT | NUMBER | Trial Court of Massachusetts |
|---|---|---|
| ☒ ADULT   ☐ JUVENILE | | District Court Department |
| | | COURT DIVISION |

| ☐ ARREST | ☐ HEARING | ☒ SUMMONS | ☐ WARRANT | IPSWICH DISTRICT |
|---|---|---|---|---|

THE WITHIN NAMED COMPLAINANT REQUESTS THAT A COMPLAINT ISSUE AGAINST THE WITHIN NAMED DEFENDANT, CHARGING SAID DEFENDANT WITH THE OFFENSE(S) LISTED BELOW

133 STATE ST

NEWBURYPORT, MA. 01950

| DATE OF APPLICATION | DATE OF OFFENSE | PLACE OF OFFENSE |
|---|---|---|
| 9-1-04 | 08/31/2004 | HAMILTON, MA |

| NAME OF COMPLAINANT | NO | OFFENSE | G.L. AND SEC |
|---|---|---|---|
| DETECTIVE Stephen H Trepanier | | | |

| ADDRESS AND ZIP CODE OF COMPLAINANT | | | |
|---|---|---|---|
| Hamilton Police Department | 1. | B&E FOR MISDEMEANOR [266/16A] | 266 16A |
| 265 BAY ROAD | | | |
| HAMILTON, MA 01982 | 2. | | |

| NAME, ADDRESS, AND ZIP CODE OF DEFENDANT | | |
|---|---|---|
| IRINA TEMKINA | 3. | |
| STAR....NEWTON RD | | |
| GLOUCESTER, MA. 01930 | | |
| | 4. | |

| COURT USE ONLY → | A hearing upon this complaint application will be held at the above court address on | DATE OF HEARING 10/14/04 | TIME OF HEARING AT 2:30 pm | COURT USE ONLY ← |
|---|---|---|---|---|

## CASE PARTICULARS - BE SPECIFIC

| NO | NAME OF VICTIM Owner of property, person assaulted, etc | DESCRIPTION OF PROPERTY Goods stolen, what destroyed, etc | VALUE OR PROPERTY Over or under $250 | TYPE OF CONTROLLED SUBSTANCE OR WEAPON Marijuana, gun, etc |
|---|---|---|---|---|
| 1 | RENNICKS, DAWN M | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

OTHER REMARKS

OBTN: THAM200400196

SIGNATURE OF COMPLAINANT

## DEFENDANT IDENTIFICATION INFORMATION - Complete data below if known.

| DATE OF BIRTH 01/26/1956 | PLACE OF BIRTH | | SOC. SECURITY NO. | SEX F | RACE W | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|---|
| OCCUPATION | EMPLOYER/SCHOOL | MOTHER'S NAME (MAIDEN) | | FATHER'S NAME | | | | | |

## ↓ COURT USE ONLY ↓

| DATE | DISPOSITION | AUTHORIZED BY |
|---|---|---|
| 10/14/04 | NO PROCESS TO ISSUE<br>☐ At request of complainant<br>☐ Complainant failed to prosecute<br>☒ Insufficient evidence having been presented | |
| | PROCESS TO ISSUE   TYPE OF PROCESS<br>☐ Sufficient evidence presented   ☐ Warrant<br>☐ Defendant failed to appear   ☐ Summons returnable | |
| | ☐ Continued to | |
| COMMENTS | A TRUE COPY ATTEST: | |

DC-CR2(5/89)

COURT COPY (WHITE)

# EXHIBIT C



**Town of Hamilton**
**Building Department**
**577 Bay Road**
**Hamilton, MA  01936**
**978-468-5585**

January 25, 2005

To:    Sandy – North Andover Housing Authority
        By Fax: 978-794-1142

From: Deb Paskowski – Town of Hamilton Building Dept.

Re:    521 Bridge Street

        Pursuant to our conversation this morning, I am confirming that the dwelling located at
521 Bridge Street is a single family dwelling.  The property is not in compliance with our
Zoning By-Laws.  In order to convert to a 2 family dwelling, they need to file a special permit
with the Town of Hamilton.  They have not done so.  The "illegal" apartment was created
after the final inspections were done on a conversion from a garage to an "office/workshop".

        I have attached a copy of the Building Inspector's letter of non-compliance, and the
permit application for the conversion.  If you have any further questions, please feel free to
contact this office.

Cc:    Board of Health

# EXHIBIT D

# FAX

**Date**   4/19/05

Number of pages including cover sheet    4

**TO:**

Nancy Atwater

**FROM:**    Deb Paskowski
            Town of Hamilton
            Building Department
            577 Bay Road
            Hamilton, MA  01936

**Phone**

**Fax Phone**  978-921-2121

**Phone**       978-468-5585
**Fax Phone**   978-468-5582

**CC:**

**REMARKS:**    ☐ Urgent    ☑ For your review    ☐ Reply ASAP    ☐ Please Comment

Hi Nancy-

Rhonda Baker asked me to fax to you
the letter regarding the 2 family status.
We have had nothing but trouble with this
since it came to light in August of 2004.
I have attached a letter to N. Andover Housing
also. If you need it specifically addressed to
you, please let me know.
                            Thank you, Deb

# EXHIBIT E

## Town of Hamilton



## BOARD OF HEALTH

577 Bay Rd., P.O. Box 429
Hamilton, MA 01936

Tel: 978-468-5579                                    Fax: 978-468-5582

# NOTICE TO VACATE



**The Hamilton Board of Health hereby orders you to vacate the premises located a 521 Bridge Street, basement apartment within seven days of this notice. This dwelling is an illegal apartment and is subject to the termination of all utilities after the issuance date of May 18th 2005**

Failure to comply with this order may result in Civil Action against you

John Jacobi, Agent