UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHARLES BRETT, BUILDING INSPECTOR OF TOWN OF HAMILTON, Plaintiff, | ) ) ) ) ) | C.A. No. 05-11542 RGS |
| v. | ) ) |  |
| IRINA V. TEMKINA, Defendant. | ) ) ) ) |  |

**MEMORANDUM IN SUPPORT OF THE
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**

**INTRODUCTION**

This litigation started as a straightforward regulatory enforcement action in state superior court. By complaint filed in July, 2005, the plaintiff Building Inspector for the Town of Hamilton filed an enforcement action to correct property defects in a single family residence owned by defendant Irina V. Temkina. Those defects are alleged to be in violation of the state building code. The action also sought to prohibit defendant Temkina from renting the property as two separate dwelling units, which she had allegedly done and which would constitute a violation of the Hamilton zoning by-law. The complaint sought injunctive relief and the imposition of fines for these violations.

The defendant's answer and counterclaim go far beyond the factual and legal predicates of the plaintiff's complaint. She asserts eight causes of action in her counterclaim, three based on federal law and five based on state common law. All eight causes of action are asserted against Mr. Brett and the Town of Hamilton as "defendants-

in-counterclaim" with no distinction made between each defendant's particular actions or limits of responsibility. The factual allegations of the counterclaim implicate actions of the Hamilton-Wenham Regional School District (a separate corporate body from the Town of Hamilton), the Police Department, the Board of Selectmen and the Board of Health. Wrongful actions by these various departments and entities are alleged to have occurred intermittently but not continuously from 1998 to the present.

Defendant's counterclaims have no place in this litigation. They are not reasonably related to the subject matter of the original complaint. They present no valid cause of action under federal or state law. Even if per chance one or more of the state law claims could survive the motion to dismiss on substantive grounds, the court should exercise its discretionary authority and decline to extend supplemental jurisdiction over them. The counterclaim should be dismissed in its entirety.

**FACTS**

Defendant Irina V. Temkina is the sole owner of record of 521 Bridge St., Hamilton, MA (the "Property"). Complaint, ¶ 7. In August 2004, plaintiff Charles Brett was called to the Property by the police while they were at the Property responding to a call for an alleged breach of the peace. *Id.*, ¶¶ 11, 14. Mr. Brett learned that the property had separate tenancies for the upper level and lower level in violation of the Property's single family zoning district. *Id.*, ¶¶ 8, 12-13. He also observed several violations of the state building code. *Id.*, ¶ 15.

In early 2005, the identity of the tenants changed, but the Property was once again rented to two separate tenants. Mr. Brett obtained copies of separate leases signed by defendant Temkina for the rental of the upper and lower levels. *Id.*, ¶¶ 26-27 and

Exhibits B and C to the complaint. The upper level was rented to Shawn and Rhonda Baker. The lower level was rented to Matthew Carter. *Id.* Mr. Brett's observations of the living spaces in the upper and lower levels were consistent with the existence of two separate dwelling units. *Id.,* ¶¶ 16, 28-29 and Exhibit D to the complaint. When the Property defects remained uncorrected and the separate residential rentals continued unabated, Mr. Brett filed his complaint.

On October 14, 2005, after removing the action to this court and filing an unsuccessful motion to dismiss, Ms. Temkina filed her answer and counterclaim. The counterclaim consists of eight causes of action, three based on federal constitutional or statutory law and five grounded in state common law. The factual allegations of the counterclaim are many and varied. Ms. Temkina alleges that in 1998, her son Elliott N. Tiomkin was the victim of anti-Semitic comments by a teacher at the Hamilton-Wenham Regional High School. He was then barred from attending the high school for two weeks, allegedly in retaliation for his complaint against the teacher. He and Ms. Temkina then allegedly filed a complaint against the school district and certain employees with the Massachusetts Commission Against Discrimination ("MCAD") in 2000. Ms. Temkina does not disclose the outcome of that complaint.

Ms. Temkina further alleges that in 2002, the Board of Selectmen for the Town of Hamilton refused to adopt a "No Place for Hate" pledge, a program sponsored by the Anti-Defamation League. There is no allegation that this non-action caused Ms. Temkina or Mr. Tiomkin any harm, although the counterclaim recites an alleged incident of an anti-Semitic slur made by an unreported person against another town resident. Counterclaim, ¶ 19.

Mr. Brett is alleged to have begun a campaign against Ms. Temkina and Mr. Tiomkin in retaliation for the filing of the MCAD complaint. As stated in the complaint, Mr. Brett first took action against Ms. Temkina in August, 2004. Complaint, ¶ 17. Mr. Brett is alleged to have stated that he would use the police department and ordinances to "drive [Ms. Temkina and Mr. Tiomkin] out of the Town of Hamilton" as they were "'unwelcome in the neighborhood . . ..'" Counterclaim, ¶¶ 21-23. The counterclaim identifies the following specific actions that the plaintiff-in-counterclaim alleges combined to cause her to suffer "economic loss" related to the Property:

1. sending communications to Ms. Temkina's tenants "ordering" them to stop paying rent;
2. posting a notice of condemnation on the Property;
3. filing a baseless application for criminal complaint;
4. communicating false information to the North Andover Housing Authority and urging it to repudiate its contract with Ms. Temkina;
5. communicating false information to the Beverly Housing Authority and urging it to breach its contract with Ms. Temkina;
6. threatening to turn off the utilities and actually terminating the water service;
7. filing the instant lawsuit;
8. utilizing municipal counsel to represent the Beverly Housing Authority and Ms. Temkina's tenant in Northeast Housing Court;
9. having the police eject the plaintiffs from the Property; and
10. otherwise harassing and intimidating the plaintiffs-in-counterclaim and preventing them from renting the Property.

*See, e.g.,* Counterclaim ¶ 82.[1]

**ARGUMENT**

**A.    Standard of Review**

The counterclaim should be dismissed if it appears beyond doubt that the claimant cannot prove facts to support a theory of recovery. *Tamburello v. Comm-Tract Corp.,* 67

---

[1] The Counterclaim describes Ms. Temkina and Mr. Tiomkin as the plaintiffs-in-counterclaim. By this Court's ruling filed on October 26, 2005, the Court denied Ms. Temkina's motion to join Mr. Tiomkin as a party. This memorandum, therefore, refers to Ms. Temkina as the only plaintiff-in-counterclaim.

4

F.3d 973, 975 (1st Cir. 1995). The court must accept all well-pled factual allegations of the counterclaim as true and draw reasonable inferences in favor of the plaintiff-in-counterclaim. *Aybar v. Crispin-Reyes,* 118 F.3d 10, 13 (1st Cir. 1997). The plaintiff-in-counterclaim must at a minimum set forth factual allegations as to each necessary element to support a claim for recovery against the defendant under some actionable legal theory. *Roth v. United States,* 952 F.2d 611, 613 (1st Cir. 1991). "[B]ald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation," however, cannot defeat a motion to dismiss. *Id.*

    **B.**    **The Federal Claims**

    1.    Violation of the Fifth Amendment to the United States Constitution (the Second Count).

Ms. Temkina alleges that as a result of various actions taken by the Town, she has been deprived of her property without just compensation and suffered economic loss, all in violation of the Fifth Amendment to the United States Constitution. Her claim suffers from a fundamental technical defect: there is no federal action alleged, nor could there be. In order to state a takings claim directly under the Fifth Amendment, the counterclaim must allege that there was a taking by the federal government. *City of Boston v. Massachusetts Port Authority,* 320 F. Supp. 1317, 1319 (D. Mass. 1971). The Town of Hamilton, as a body politic, is a corporate subdivision of the Commonwealth of Massachusetts. The actions of its agents and employees cannot constitute federal action for the purposes of a takings claim asserted directly under the Fifth Amendment. *City of Boston,* 320 F. Supp. at 1319.

It will be presumed for the purposes of this motion that Ms. Temkina will seek to amend her counterclaim to assert a takings claim as applied to states and municipalities

5

under the Fourteenth Amendment. No amount of repleading, however, can establish a takings claim by the Town of Hamilton or Mr. Brett under the circumstances alleged. Clearly, Mr. Brett cannot be sued individually on a takings claim. Nor does the second count of the counterclaim state a viable claim against the Town. There has been no physical invasion of the Property by the Town. Instead, the claim is that the Town's action have caused the property "to significantly diminish in value" and otherwise caused "significant economic impact," thereby in effect constituting a taking. Counterclaim, ¶¶85-86.

It is well settled that land use regulation such as by zoning by-law, even if it results in a substantial diminution of value, cannot constitute a taking under the Fifth and Fourteenth Amendments. *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 131 (1978); *Euclid v. Ambler Realty Co.,* 272 U.S. 365 (1926). All of the Town's actions against the Property are directed to the enforcement of state and local land use regulations. Ms. Temkina does not allege that these regulations are invalid. The enforcement of valid zoning and land-use restrictions is a reasonable exercise of municipal authority and does not constitute a taking. *Palazzolo v. Rhode Island,* 533 U.S. 606, 627 (2001). The Town's actions have not deprived Ms. Temkina of all economically beneficial or productive use of her Property. *Compare with Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992). She can have no reasonable investment-backed expectation to use her property in violation of the state building code and the Town's zoning by-law. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982), *citing Penn Central*.

      2.      Violation of United States Constitution Article I Section 10 (the Third Count)

Defendant does not specify which clause of Article I Section 10 she believes has been violated by action of the Town of Hamilton. In her lengthy paragraph 91 to her counterclaim, defendant alleges that actions of the Town of Hamilton "utilized state and local law to substantially impair governmental contractual obligations." It seems, therefore, that the defendant is relying upon that portion of clause 1 that prohibits states from impairing the obligation of contracts. That clause provides in pertinent part:

> No State shall . . . *pass any* . . . *Law* impairing the Obligation of Contracts, . . ..

Emphasis supplied.

For there to be a violation of the contract clause, at a minimum there must be an existing contractual relationship, a change in law that impairs the contractual relationship and the impairment must be substantial. *Nat'l Ass'n of Government Employees v. Commonwealth of Massachusetts,* 419 Mass. 448, 450 (1995), *quoting General Motors Corp v. Romein,* 503 U.S. 181 (1992). The cases discussing the reach of the contracts clause of Article I, Section 10 are numerous. Yet they share in common a requirement that at a minimum there be a change of law that either retrospectively or prospectively changes the rules under which contracting parties operate. *See, e.g., Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 241-42 (1978) and cases cited therein (adjudging constitutionality of enactment of law affecting private pension benefits); *Frazier v. Lowndes County, Mississippi, Board of Education,* 710 F.2d 1097, 1099-1100 (5th Cir. 1983) (in affirming the dismissal of the complaint, the court noted that the contracts

clause only applied to impairments through the exercise of legislative authority, and the county board's insistence on renegotiation of leases was not an exercise of legislative authority).

In contrast, in this case there is no allegation that there has been any change in law. Instead, Ms. Temkina alleges that her contractual relationships have been adversely affected by the town's enforcement of prior existing state and local regulations, namely the building code and zoning by-law. The Town's authority to enforce prior existing laws, even if they invalidate contracts, is long settled. In *Hudson County Water Co. v. McCarter*, 209 U.S. 349 (1908), a private water company drew water from New Jersey waters and transported it to New York. In 1905, the state of New Jersey enacted a statute that prohibited water from being transported from New Jersey to another state. Subsequent to passage of the law, the water company executed a contract with the City of New York to provide it with water which it drew from New Jersey. New Jersey then sought an injunction prohibiting the company from violating the 1905 statute. *Id.* at 353.

Justice Holmes made short work of the defendant's claim that the statute was a violation of the contracts clause. "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry the infirmity of the subject matter. [citations omitted] But the contract, the execution of which is sought to be prevented here, was illegal when it was made." *Id.* at 357. It is the Building Inspector's contention that the leases of the single family residence to two families were illegal when made. It is no violation of the contracts clause to enforce regulations that were in effect long before the defendant purchased the property and entered into the contracts at issue.

8

3.  Violation of 42 U.S.C. § 1983 (the Fourth Count)

" 'A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law [and] second, the conduct must have worked a denial of rights secured by the Constitution or by federal law.'" *Sietins v. Joseph,* 238 F. Supp. 2d 366, 375 (D. Mass. 2003), *quoting Soto v. Flores,* 103 F.3d 1056, 1061-62 (1st Cir. 1997). Ms. Temkina alleges that she has a § 1983 claim for three reasons: she has been denied her free exercise of her religion (Counterclaim, § 96), she has been denied due process of law (*Id.,* ¶ 97), and her civil rights have been violated (*Id.,* 98).

There is no viable § 1983 claim based upon the claim that Ms. Temkina was denied her free exercise of religion. First, while Ms. Temkina implies that she is Jewish, nowhere in fact is that pled. It is not reasonable to infer that Mr. Brett knew she was Jewish, another fact not pled. Finally, there is an obvious disconnect between Ms. Temkina's religion and the use of her property; none of Mr. Brett's actions in any way affected the exercise of her religion.

In general, the § 1983 claim is based on the allegation that Mr. Brett took action against Ms. Temkina in unlawful retaliation for "filing a discrimination complaint with the MCAD . . .." Counterclaim ¶¶ 95-98. In a Section 1983 civil rights case, government officials sued in their individual capacities are protected under the "qualified immunity" doctrine. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818

9

(1982).  "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Mr. Brett's actions do not violate clearly established law.  There is no allegation that he even knew of the MCAD complaint filed against the regional school district four years prior to his involvement with the Property.  At the least, this count should be repled to state with specificity what due process rights (*i.e.,* substantive or procedural) and what particular civil rights Ms. Temkina believes were violated.  With the scattershot nature of the allegations as stated in the counterclaim, the defendants-in-counterclaim cannot begin to defend themselves against this serious claim.

Finally, the Town cannot be sued for violation of 42 U.S.C. § 1983 because there is no municipal liability under this statute based upon a theory of *respondeat superior*.  *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 691 (1978); *Hayes v. Town of Orleans,* 39 Mass. App. Ct. 682, 683 (1996).  For the municipality to be liable, the alleged wrongful action must be pursuant to official municipal policy which causes a constitutional tort.  *Monell,* 436 U.S. at 691.  There is no allegation that there has been any official municipal policy that has adversely affected Ms. Temkina's constitutional rights.[2]  Remedy for the actions of various officials does not lie against the Town of Hamilton under 42 U.S.C. § 1983.

---

[2] The only allegation relating to an official Town policy making board is the allegation that the Board of Selectmen in 2002 declined to adopt the "No Place for Hate" resolution.  This constitutes non-action, not the adoption of an official municipal policy.

10

### C. The State Law Claims

1. Tortious Interference with Advantageous Business Relations (the First Count)

Five of the eight causes of action in the counterclaim rely upon state common law. The first count, Tortious Interference with Advantageous Business Relations, specifically relies upon recitations of numerous allegedly wrongful actions as establishing the plaintiff-in-counterclaim's right to recover against both Mr. Brett and the Town of Hamilton. The allegations are as follows:

1. sending communications to Ms. Temkina's tenants "ordering" them to stop paying rent;
2. posting a notice of condemnation on the Property;
3. filing a baseless application for criminal complaint;
4. communicating false information to the North Andover Housing Authority and urging it to repudiate its contract with Ms. Temkina;
5. communicating false information to the Beverly Housing Authority and urging it to breach its contract with Ms. Temkina;
6. threatening to turn off the utilities and actually terminating the water service;
7. filing the instant lawsuit;
8. utilizing municipal counsel to represent the Beverly Housing Authority and Ms. Temkina's tenant in Northeast Housing Court;
9. having the police eject Ms. Temkina and Mr. Tiomkin from the Property; and
10. otherwise harassing and intimidating Ms. Temkina and Mr. Tiomkin and preventing them from renting the Property.

All of these actions are intentional acts. Under the Massachusetts Tort Claims Act, the Town is immune from liability for all state law causes of action based upon the intentional acts of its employees. G.L. c. 258, § 2 provides in pertinent part:

> Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . ..

G.L. c. 258, § 10 then provides:

>The provisions of sections one to eight, inclusive, shall not apply to: -
>
>(c)   any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations . . ..

Under the express terms of G.L. c. 258, § 10, Ms. Temkina is barred from suing the Town of Hamilton on her claims of tortious interference with advantageous business relations (the first count), malicious prosecution (the fifth count), abuse of process (the sixth count) and intentional infliction of emotional distress (the seventh count).

As for the viability of this particular claim against Mr. Brett as a named individual public official, Ms. Temkina must allege the existence of a contract of economic benefit to her, the defendant's knowledge of the contract, the defendant's intentional interference with the contract "for an improper purpose or by improper means," and damages. Ms. Temkina's allegations do not support each of these elements. Although she alleges that the defendant "ordered" the tenants in 2004 to stop paying their rent, there is no allegation that the tenants in fact stopped paying. Counterclaim, ¶¶ 34-35. Although the defendant is alleged to have ordered that the premises be vacated by August 24, 2004, clearly, that did not happen. *Id.,* ¶ 31. The defendant is alleged to have caused the North Andover Housing Authority to have breached its contract with Ms. Temkina. *Id.,* ¶¶ 55-56. There is no allegation, however, that Mr. Brett or his assistant knew at the time of the communications with the North Andover and Beverly Housing Authorities that there were contracts in existence between them and Ms. Temkina. Nothing contained in the communications to the housing authorities was improper. Exhibits C and D to the Counterclaim. In sum, the allegations relied upon in support of this cause of action do

not show that Mr. Brett's actions actually improperly interfered with any particular contract of which Mr. Brett had knowledge.

       2.       Malicious Prosecution (the Fifth Count)

A viable claim for malicious prosecution requires that Ms. Temkina plead facts that demonstrate that she was damaged because Mr. Brett prosecuted a prior action with malice and without probable cause and that the prior action terminated in her favor. *Beecy v. Pucciarelli,* 387 Mass. 589, 593 (1982). The prior action upon which Ms. Temkina relies is the criminal proceeding in the Ipswich District Court. Counterclaim, ¶ 104. In the extensive paragraphs setting forth the details of this proceeding, there is no allegation that Mr. Brett had any involvement in this matter. Counterclaim, ¶¶ 39-47. Mr. Brett is not alleged to be responsible for the actions of the police officers. This claim must be dismissed.

       3.       Abuse of Process (the Sixth Count)

The essential elements of this tort are that (1) process was used, (2) for an ulterior or illegitimate purpose, (3) resulting in damage. *DataComm Interface, Inc. v. Computer World, Inc.*, 396 Mass. 760, 775-76 (1986). There is no evidence to support a finding on the second element: that Mr. Brett had an ulterior motive or illegitimate purpose in filing this lawsuit which is inconsistent with or not intended to accomplish some legitimate purpose of the particular process utilized. *Ladd v. Polidoro,* 424 Mass. 196, 200 (1997); *Sietins,* 238 F. Supp. 2d at 380.

In *Ladd* the Supreme Judicial Court most recently explained the meaning of the element of an ulterior or illegitimate purpose. The Court ruled that a claim of abuse of process was not supported merely by showing that the defendant knowingly obtained a

13

meritless attachment on property. To succeed on an abuse of process claim a plaintiff must prove more, that the attachment was made for an ulterior motive. Citing a long string of cases, the Court concluded that groundlessness of an action by itself is not sufficient:

> 'To constitute a cause of action for [abuse of process] it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended or which was not the legitimate purpose of the particular process employed.'

*Id.* at 198, *quoting Gabriel v. Borowy*, 324 Mass. 231, 236 (1949).

Moreover, "[u]lterior motive is more than the intent to harass; there must be intention to use process for coercion or harassment to obtain something not properly part of the suit." *Broadway Management Services Ltd. v. Cullinet Software*, *Inc.,* 652 F. Supp. 1501, 1503 (D. Mass. 1987). When process is used for the purpose for which the law intends, there can be no claim for abuse of process even if the claimant has an incidental, improper motive in addition to his lawful intention. *Vahlsing, Jr. v. Commercial Union Insurance Co., Inc.,* 928 F.2d 486, 490 (1st Cir. 1991); *Broadway Management,* 652 F. Supp. at 1504 (*citing Antelman v. Lewis,* 480 F. Supp. 180, 186-87 (D. Mass. 1979). Mr. Brett availed himself of legal process for the very purpose for which it was intended.

    4.  Intentional Infliction of Emotional Distress (the Seventh Count)

To allege a viable claim for intentional infliction of emotional distress, Ms. Temkina must allege: 1) that Mr. Brett intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct, 2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and "utterly intolerable in a civilized community," 3) that Mr. Brett's actions were the

14

cause of emotional distress, and 4) that the emotional distress sustained was "severe and of a nature that no reasonable man could be expected to endure it." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976). These requirements are designed to eliminate frivolous claims generated by mere bad manners and bruised feelings. They furnish a practical limitation against false and spiteful litigation. *Id.* at 145.

The principal deterrent against invalid claims of intentional infliction of emotional distress is the requirement that the defendant must have engaged in extreme and outrageous conduct. *Foley v. Polaroid Corp.,* 400 Mass. 82, 99 (1987). As stated above, the conduct must be so outrageous in character and so extreme in degree as to go beyond bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. It is not enough "'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' … .'" *Foley,* 400 Mass. at 99, *quoting Restatement (Second) of Torts* § 46 comment d (1965)).

None of Mr. Brett's alleged actions rise to this level. The predicates alleged to support his claim are identical to those alleged in the claim for tortious interference with advantageous business relations. Mr. Brett is alleged to have "ordered" the tenants to stop paying their rent. Counterclaim, ¶¶ 34, 113. The letter in which this order was allegedly made is attached to the Counterclaim as Exhibit A. The letter establishes that it is a gross mischaracterization to say that Mr. Brett issued an order. Mr. Brett *advised* the tenants to stop paying rent "due to the condition of the dwelling and the serious code violations that exist." There is no allegation that Mr. and Mrs. Shatford actually took Mr. Brett's advice.

15

Mr. Brett's assistant is alleged to have communicated "false information to the North Andover and Beverly Housing Authorities and urging them to repudiate their contracts with Ms. Temkina. Again, the actual communications show nothing of the sort. The communications attached as Exhibits C and D to the Counterclaim contain no express or implied effort urging the housing authorities to breach their contracts. Mr. Brett is alleged to have turned off the water (admitted to be temporary, Counterclaim, ¶ 65), temporarily posted a condemnation sign on the Property (again, admitted to be temporary, Counterclaim, ¶ 38) and filed this lawsuit. This can hardly constitute extreme and outrageous conduct. It can easily be proven that municipal counsel never represented the Beverly Housing Authority or Ms. Temkina's tenants in housing court, but even accepting this allegation as true, there is nothing outrageous or improper about that representation. Mr. Brett is not alleged to have played any role in Ms. Temkina's ejection from the property by the police.

In all, even accepting all Ms. Temkina's allegations as true (but not her unsupported characterizations), Mr. Brett's actions do not rise to the level of extreme and outrageous conduct. They are not "utterly intolerable in a civilized community," nor do they extend "beyond all possible bounds of decency."

     5.     Negligence (the Eighth Count)

Mr. Brett is immune from liability for claims of negligence in the course of his performance of his official duties. G.L. c. 258, § 2. While the Massachusetts Torts Claims Act provides that the party subject to suit for negligence is the municipality, not the public official, in this instance liability does not lie against either party because of a fundamental defect in Ms. Temkina's pleading. Ms. Temkina does not allege any

negligent conduct by anyone for whom the Town of Hamilton could be responsible. If negligent conduct were identified, the Town may be immune from liability under one of the categories of immunity set forth in G.L. c. 258, § 10. As matters stand, however, the Town is immune from liability for intentional acts and no negligent acts are pled.

### D. Supplemental Jurisdiction and the State Law Claims

Pursuant to 28 U.S.C. § 1367(a), the court has supplemental jurisdiction over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," derived from a common nucleus of operative fact and would ordinarily be expected to be tried in one action with federal claims of substantial merit. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725 (1966). Jurisdiction over state law claims should be declined when the state law claims "substantially predominate over the federal claims," all the federal claims have been dismissed, or values of economy, convenience, fairness and comity support dismissal. 28 U.S.C. § 1367(c); *City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 173 (1997).

The court should exercise its discretion and decline to extend federal court jurisdiction over the counterclaim. The factual allegations of the counterclaim extend far beyond the original complaint in time frame and implicate numerous persons who would likely be witnesses but who are otherwise irrelevant to the Building Inspector's action. The federal claims lack substantial merit. Judicial economy and fairness weigh against joining these claims to the original complaint.

**CONCLUSION**

For the reasons set forth above, the plaintiffs/defendant-in-counterclaim Building Inspector of the Town of Hamilton and defendant-in-counterclaim Town of Hamilton request that their Motion to Dismiss Defendant's Counterclaims be granted.


Dated:  November 3, 2005                                   Respectfully submitted,

                                                           PLAINTIFF TOWN OF HAMILTON
                                                           BUILDING INSPECTOR,
                                                           By his Attorney,

                                                           /s/ Donna Brewer MacKenna
                                                           Donna Brewer MacKenna, BBO 545254
                                                           Casner & Edwards, LLP
                                                           303 Congress Street
                                                           Boston, MA  02210
                                                           (617) 426-5900
                                                           mackenna@casneredwards.com

                                                           DEFENDANTS-IN-COUNTERCLAIM
                                                           TOWN OF HAMILTON BUILDING
                                                           INSPECTOR AND
                                                           TOWN OF HAMILTON
                                                           By their Attorney,

                                                           /s/ Leonard H. Kesten
                                                           Leonard H. Kesten, BBO 542042
                                                           Brody Hardoon Perkins & Kesten
                                                           One Exeter Plaza
                                                           Boston, MA 02116
                                                           (617) 880-7100
                                                           lkesten@bhpklaw.com

6134.22/366161.1