UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLES BRETT, BUILDING )
INSPECTOR OF TOWN OF HAMILTON, )
)
Plaintiff, )
)
v. )  No. CV-05-11542-RGS
)
IRINA V. TEMKINA, )
)
Defendant. )

## DEFENDANT'S OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM

### I. STANDARD OF REVIEW

In deciding whether dismissal is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Insurance Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). In order to withstand a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997), citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). However, "the liberal pleading policy embodied in Rule 8 does not require a party to specify its legal theory of recovery." *McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger*, 280 F.3d 26, 38 (1st Cir. 2002). Instead, notice pleading requires that a complaint plead facts that merely "implicate the relevant legal issues." *Id.* Pro se pleadings are construed liberally, *Strahan v.*

Coxe, 127 F.3d 155

*Coxe*, 127 F.3d 155, 158 n. 1 (1st Cir. 1997), and all pleadings "shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

## II. THE DEFENDANT HAS STATED A CLAIM UNDER 42 U.S.C. § 1983 AGAINST THE TOWN OF HAMILTON AND BRETT

The defendant-in-counterclaim Town of Hamilton and Plaintiff Charles Brett allege that the defendant has not stated a claim under 42 U.S.C. § 1983. Plaintiff alleges that the defendant has not alleged a violation of clearly established law, and he is entitled to qualified immunity, and the Town alleges that no official municipal policy resulted in a constitutional tort. If the facts of the pleading are taken as true, and with all reasonable inferences drawn in favor of the defendant, the counterclaim has set forth a cause of action.

### A. Brett's Liability

Courts employ a three part test to determine if an official is entitled to qualified immunity under Section 1983: (1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue. *Mihos v. Swift*, 358 F.3d 91 (1st Cir. 2004), citing *Suboh v. District Attorney's Office of Suffolk Disrict*, 298 F.3d 81, 90 (1st Cir. 2002).

Abuse of municipal authority, including municipal ordinances and land use provisions, is not unprecedented, and such violations may remedied under our civil rights laws. In *Tortora v. Inspector of Buildings of Tewksbury*, 41 Mass.App.Ct. 120 (1996), a complaint was brought under the Massachusetts Civil Rights Act. The court reversed the grant of summary judgment for the defendants, finding that a remand for a trial to "determine whether the defendants crossed the line separating legitimate exercise of their authority from illegal harassment or impairment of the plaintiffs right to use and enjoy their property" was warranted. *Id.* at 123-24. The court held that

2

"a reasonable factfinder could find that the defendants interfered with the plaintiffs' right to live a normal life at their home by overzealous "inspections" and improper threats of arrest...there were threats of retributive arrest or official action for lawful conduct such as putting a nail in the building or applying for a permit in the town. By "threats, intimidation and coercion" the defendants in their official capacities sought to cause the plaintiffs to cease attempts to pursue lawful avenues to use and enlarge their property. *Id.* at 123 (internal citations omitted).

In the instant case, the abusive conduct is far more insidious. The defendant, a practicing Jew and a member of a protected class, alleges that she was singled out for harassment and intimidation by the plaintiff after she filed a discrimination complaint against the Town, alleging anti-Semitic conduct. She further alleges that the plaintiff, in retaliation for her complaint, wrongfully used his authority to enforce municipal ordinances to prevent her from renting her home.

The plaintiff sent communications to the defendant's tenants, ordering them to stop payment of rent and vacate the premises, without authority to do so; posted a notice of "condemnation" on the defendant's property, without legitimate reason to do so; requested that a groundless and baseless application for criminal complaint be brought against the defendant; communicated false information to several housing authorities and urged them to repudiate contracts with the defendant; threatened to terminate utilities and ultimately terminated water service to the defendant's property, all in retaliation for purported violations of a local ordinance; brought groundless and baseless litigation against the defendant alleging violations of the state building code and a local zoning by-law; utilized his municipal counsel to represent the defendant's tenant after the defendant sued the tenant for back rent; wrongfully used the police to physically eject the defendant from her property. Counterclaim ¶¶ 95-98.

The defendant contends that as pled, her counterclaim could not be more clear: the plaintiff violated her constitutional rights, including her right to freely exercise her religion

without unlawful retaliation, her right to equal protection of the laws regardless of her religion, and her right not to be deprived of her property without due process of law. *Id.* These rights are clearly established, and a reasonable official would have so understood. Brett took these actions without the lawful authority or permissible reason to do so. Counterclaim ¶¶ 95-98.

Plaintiff alleges that "there is an obvious disconnect between Ms. Temkina's religion and the use of her property; none of Mr. Brett's actions in any way affected the exercise of her religion." Memorandum at 9. This is not the case. The plaintiff's conduct is directly related to the defendant's religion and exercise thereof. The defendant asserted her right to file a discrimination complaint, and, in retaliation for that action, the plaintiff targeted the defendant for harassment and intimidation. Plaintiff alleges that "there is no allegation that he even knew of the MCAD complaint...prior to his involvement with the property." Memorandum at 10. This assertion is belied by the facts of the counterclaim, which alleges that "in retaliation for [the defendant's] filing of the MCAD complaint, [the plaintiff] organized a campaign to harass and intimidate [the defendant], prevent [her] from renting [her] home and drive [her] out of the Town of Hamilton, held meetings, and announced his intent to use the enforcement of municipal ordinances to effectuate his retaliatory conduct." Counterclaim ¶¶ 21-23.

### B. Town of Hamilton's Liability

With respect to the Town, while it is true that "a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under 1983 on a respondeat superior theory," *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), the Court in *Monnell* set forth the general rule that in order to hold

4

a municipality liable under the policy requirement, the policy in question does not have to come from the highest level within the municipal government. *Id.* at 660. Therefore, individual decision-making actions representing municipal policy and authority can lead to liability. *Id.* at 661. For example, the Court held that because the county attorney had final authority to determine the proper steps police officers should take in executing arrest warrants, the county attorney's decision that, in a particular case, officers should forcibly enter an office to execute a warrant was deemed county policy and thus could lead to section 1983 county liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

In the instant case, the policy in question is plaintiff Brett's concerted effort to prevent the defendant from renting her home and drive her out of the Town in retaliation for the defendant's filing of the MCAD complaint alleging anti-Semitism. Counterclaim ¶ 21. This policy has involved meetings to discuss the defendant, Counterclaim ¶¶ 22-23, and the enlistment of various Town departments, including the water department and the board of health, Counterclaim ¶¶ 63-65, the town counsel, Counterclaim ¶¶ 66-70, and the police department, Counterclaim ¶¶ 39-51, 71-78. The counterclaim makes clear that plaintiff Brett is not a minor town employee; rather, he orchestrated the actions of various employees in a variety of respects: commencing litigation against the defendant, turning off utilities at the defendant's property, posting condemnation notices at the defendant's property, ejecting the defendant from her property, causing breaking and entering charges to be filed against the defendant as a result of her entry onto her property, and instructing the defendant's tenants to vacate their dwelling and cease paying rent.

Moreover, as the Town admits, the counterclaim does refer to a written policy: the selectmen's refusal to adopt the "No Place for Hate" resolution. The Town argues that "[t]his

constitutes non-action, not the adoption of an official municipal policy." The Town would have a hard time making this argument if the Town refused to adopt (and enforce) a state or federal statute prohibiting anti-Semitic or other discriminatory bias

The defendant has stated a Section 1983 claim against the Town of Hamilton and Brett.

### III. THE DEFENDANT HAS STATED A TAKINGS CLAIM AGAINST THE TOWN OF HAMILTON

#### A. Incorporation

Plaintiff alleges that the defendant fails to state a takings claim against the Town of Hamilton because the defendant does not specifically plead the incorporation of the takings clause pursuant to the Fourteenth Amendment. *See Chicago, B. & Q. R. Co. v Chicago*, 166 U.S. 226 (1897). As noted supra, it is well settled law that "the liberal pleading policy embodied in Rule 8 does not require a party to specify its legal theory of recovery." Instead, notice pleading requires that a complaint plead facts that merely "implicate the relevant legal issues." While plaintiff acknowledges that the failure to reference the Fourteenth Amendment is a "technical defect" and may be cured by amendment, this claim is emblematic of a significant portion of the plaintiff's argument. The plaintiff plainly disregards the rule that, in considering a motion to dismiss, courts "look only to the allegations of the complaint and, if <u>under any theory</u> they are sufficient to state a cause of action in accordance with law, a motion to dismiss the complaint must be denied." *Knight v. Mills*, 836 F.2d 659, 664 (emphasis added). The plaintiff clearly has notice of the plaintiff's takings claim. This is clear from the plaintiff's own recognition that the alleged defect is a "technical" one. Under Rule 8(e), "no technical forms of pleading…are required." Notice pleading does not require the defendant to leap through technical loopholes.

Plaintiff further alleges that the defendant has failed to state a takings claim as a matter of law. In support of this argument, plaintiff misrepresents the legal standard and improperly disputes the facts pled in the counterclaim.

The Supreme Court distinguishes between two types of takings claims: physical takings and regulatory takings, otherwise known as inverse condemnation. *See Yee v. City of Escondido*, 503 U.S. 519, 522 (1992); *see also Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002). The defendant has stated both physical, albeit temporary, as well as inverse condemnation claims

### B. Physical Taking

A physical taking occurs when there is a "condemnation" or a "physical appropriation" of the property. *Tahoe-Sierra*, 535 U.S. at 322. The counterclaim alleges, *inter alia*, that the Town of Hamilton had improperly terminated utilities to the defendant's property, Counterclaim ¶¶ 63-65, unlawfully posted condemnation notices on her property, Counterclaim ¶¶ 36-38, and used the police department to unlawfully eject the defendant from her own property, Counterclaim ¶¶ 71-78. The defendant-in-counterclaim Town of Hamilton wrongly contends that "there has been no physical occupation of the property." Memorandum at 6. The Town also cites the temporary nature of the occupation. Memorandum at 16. This matters not. "In rejecting petitioners' per se rule, we do not hold that the temporary nature of a land-use restriction precludes finding that it effects a taking; we simply recognize that it should not be given exclusive significance one way or the other." *Tahoe-Sierra*, 535 U.S. at 337.

The defendant-in-counterclaim mischaracterizes the defendant's counterclaim, stating that "[a]ll of the Town's actions against the Property are directed to the enforcement of state and local land use regulations. Ms. Temkina does not allege that these regulations are invalid."

7

Memorandum at 6. In fact, while the defendant does not challenge the <u>facial validity</u> of local zoning and state building code regulations, the counterclaim does allege that the Town of Hamilton relies on the regulations as a <u>mere pretext</u>. The defendant alleges that her property did not violate any state or local regulations, and that, moreover, no enforcement of a "state [or] local land use regulation" could possibly account for or justify the Town's physical occupation of the defendant's property, including improperly terminating utilities to the defendant's property, Counterclaim ¶¶ 63-65; unlawfully posting condemnation notices on her property, Counterclaim ¶¶ 36-38; using the police department to unlawfully eject the defendant from her own property, Counterclaim ¶¶ 71-78;

### C. Inverse Condemnation

A regulatory taking transpires when a significant restriction is placed upon the owner's use of his property for which justice and fairness require that compensation be awarded. The inverse condemnation jurisprudence began with *Pennsylvania Coal v. Mahon*, 260 U.S. 393 (1922), where Justice Holmes held that "[t]he general rule…is that while property may be regulated to a certain extent, if that regulation goes too far, it will be recognized as a taking." *Id.* at 415. "After Mahon, neither a physical appropriation nor a public use has ever been a necessary component of a regulatory taking." *Sierra-Tahoe*, 535 U.S. at 326.

The Town of Hamilton, citing the per se regulatory taking test articulated in *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992), contends that "[t]he Town's actions have not deprived Ms. Temkina of all economically beneficial and productive use of her property." Memorandum at 6. No such circumstance is necessary to allege a regulatory taking. In fact, courts first apply the "ad hoc, factual inquiry" to evaluate whether a regulatory taking has occurred: (1) what is the economic impact of the regulation; (2) whether the government action interferes with reasonable

investment-backed expectations; (3) what is the character of the government action. *Pennsylvania Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978). "Courts have eschewed any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action be compensated by the government. Id. at 124. "Functionally, per se rules are simply shortcuts...one factor is frequently dispositive." *Phillip Morris, Inc. v. Reilly*, 312 F.3d 24, 35-36 (1st Cir. 2002).

The decision in *Palazzolo v. Rhode Island*, 533 U.S. 627 (2001) is cited by the Town in support of its contention that it was merely "enforcing valid restrictions" and acting in the scope of its municipal authority when it turned off utilities to the defendant's property, posted a condemnation sign on the home, used police officers to evict the defendant from her property, and ordered the defendant's tenants not to pay rent and vacate the premises, and should not be subject to a takings claim. In fact, in *Palazzollo*, Justice Kennedy, having determined that a deprivation of all economic use under *Lucas* is not necessary to state a takings claim, concluded that an owner who took title after the effective date of the regulation could challenge the governmental action:

> "Just as a prospective enactment, such as a new zoning
> ordinance, can limit the value of land without effecting a taking because it
> can be understood as reasonable by all concerned, <u>other enactments are
> unreasonable and do not become less so through passage of time or title.</u>
> Were we to accept the State's rule, the postenactment transfer of title <u>would
> absolve the State of its obligation to defend any action restricting
> land use, no matter how extreme or unreasonable.</u>" 533 U.S. at 627 (emphasis added).

Drawing all reasonable inferences in favor of the defendant, the counterclaim demonstrates that the Town's actions were extreme and unreasonable. The defendant has stated a claim under the *Penn* factors. The Town's actions resulted in a substantial economic impact on the defendant's business. Through its conduct, the Town succeeded in preventing the defendant from renting her

home. The Town's conduct upset the defendant's investment-backed expectations, which consisted of being able to lawfully rent her property: without improper termination of utility services; without unlawful posting of condemnation signs; without being ejected from her property by the police; without the issuance of orders to her tenants to cease paying rent and vacate the premises.[1] Lastly, the character of the Town's conduct was, to say the least, outrageous. The defendant had not violated any laws or ordinances and the Town's actions did not constitute lawful enforcement of any law or ordinance. Rather, the Town's abusive behavior was a product of retaliation for the defendant's allegations of anti-Semitism and religious discrimination. Of course, no municipal immunity for takings claims exist, and the defendant certainly need not prove malice. At the same time, the Town may not avoid liability for unreasonable actions restricting land use by simply alleging that it was merely "enforcing regulations."

## IV. THE DEFENDANT HAS STATED A CLAIM UNDER THE CONTRACT CLAUSE AGAINST THE TOWN OF HAMILTON

The defendant-in-counterclaim Town of Hamilton alleges that the defendant has not stated a cause of action under the Contract Clause against the Town of Hamilton because "there has not been a change in law," but "enforcement of prior state and local regulations." Memorandum at 8. It is well settled that municipal action is a law within the meaning of Article I, section 10. *City of Vicksburg v. Vicksburg Waterworks Co.*, 202 U.S. 453 (1906) (resolutions adopted by a city council, which have the force of ordinances, are a law within the meaning of the Contract Clause). Moreover, orders may be construed as laws. *Louisville & Nashville*

---

[1] Those expectations did not consist of "us[ing] her property in violation of the state building code and the Town's zoning by-law." Memorandum at 6. No such facts are alleged in the counterclaim; in fact, the defendant alleges that her property did not violate any regulation. The defendant-in-counterclaim is, once again, arguing with the facts contained in the pleading.

10

*Railroad Co. v. Garrett*, 231 U.S. 298 (1913) (order of railroad commission is law within the meaning of the Contract Clause).

The Town's orders applicable to the defendant's property do not constitute mere enforcement of existing regulations but represent a state's attempt to interfere with existing contracts, including contracts with a federal government program. Enforcement can not account for the Town's conduct in this case.[2] The Town's orders and other action against the defendant represent a "change of law" as applied to the defendant's property.

While "it may be the Building Inspector's contention that the leases of the single family residence to two families were illegal when made," these allegations are disputed in the operative pleading. The defendant contends that her property and her contracts were not in violation of any pre-existing law. In fact, on two occasions within the last year, the property was approved for lease under the Federal Section 8 Housing Choice Voucher Program. Counterclaim ¶¶ 54, 59. The Town proceeded to interfere with the contracts the defendant had executed under the Program. The Town acted to eject the defendant's tenants by turning off utilities, by posting condemnation notices, and by sending notices ordering the defendant's tenants to vacate their dwelling and to cease paying rent. Counterclaim ¶¶ 31-38, 63-65. On numerous occasions, the Town also issued communications to the housing authorities administering the Program, falsely stating that the defendant had violated ordinances and urging the housing authorities to terminate their contracts under the Program. Counterclaim ¶¶ 55, 60.

The defendant has stated a claim against the Town of Hamilton under the Contract Clause.

---

[2] There is no law which permits municipalities to order residential tenants to cease paying rent. In the absence of lawful condemnation, there is no law which permits municipalities to evict residential tenants from their dwelling or owners from their property or post condemnation notices. There is no law which permits municipalities to turn off utilities, even if the property owner has violated an ordinance.

## V. THE DEFENDANT HAS STATED TORT CLAIMS AGAINST BRETT AND NEGLIGENCE CLAIMS AGAINST THE TOWN OF HAMILTON

Plaintiff Brett does not allege that he is personally immune from liability with respect to the defendant's state law claims. Rather, plaintiff alleges that the defendant has failed to plead the requisite elements of her state law claims. Despite plaintiff's efforts to argue with the facts on the face of the pleading, it is apparent from the express text of the defendant's counterclaim as well as reasonable inferences drawn thereto, that the pleading presents a set of facts justifying recovery.

### A. TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS

In order to state a claim for tortuous interference with advantageous business relations, the defendant must allege four elements: (1) that she had a contract with a third party; (2) that the plaintiff knowingly induced the third party to break the contract; (3) that the plaintiff's interference was improper in motive or means; and (4) that the defendant was harmed by the plaintiff's actions. *Draghetti v. Chmielewski*, 416 Mass. 808, 816 (1994).

#### i. Harm

Plaintiff claims that the defendant has failed to allege that her tenants actually stopped paying rent after the plaintiff ordered them to do so. Memorandum at 12. The record before the court permits the reasonable inference that the tenants actually stopped paying rent. Exhibit A to the counterclaim, a communication from the plaintiff to the defendant's tenants, Mr. and Mrs. Shatford, "advise[s]" the defendant's tenants to stop paying rent, and then states "[h]opefully this letter will aid you in your request for the bank." There is little doubt that the "request for the bank" involved the interruption of rent payments.[3]

---

[3] The defendant ultimately recovered rent from the Gloucester Housing Authority which administered the Shatfords' Section 8 Voucher. Unfortunately, this was not the last effort by the plaintiff to interfere with the defendant's

12

The plaintiff next alleges that the premises were not actually vacated by August 24, 2004 despite his unlawful order. Memorandum at 12. The defendant indeed does not allege that the premises were actually vacated at that time.[4] However, this is not a necessary element of the plaintiff's tortuous interference claim. It suffices that the plaintiff made numerous written and oral communications containing false statements concerning the condition of the dwelling; those communications improperly ordered the defendant's tenants to vacate their home (in the case of the Shatfords, in five days time) and stop paying rent; the plaintiff also took other actions, including turning off utilities to the premises, posting notices of "condemnation" on the premises, requesting that the police department remove the defendant from her property and file criminal charges against her, and supplying the defendant's tenants with legal representation by its own municipal counsel when the defendant sued them for back rent, and filing the instant action. Counterclaim ¶¶ 25-78.

The defendant certainly alleges that she was harmed by the plaintiff's actions. After the Shatfords moved, the North Andover Housing Authority repudiated its contract and the Beverly Housing Authority breached its contract—all as a direct result of the plaintiff's conduct. Counterclaim ¶¶ 56, 61.

ii. Knowledge

The plaintiff alleges that there is no allegation that he knew that there were contracts in existence between the North Andover and Beverly Housing Authorities, and Ms. Temkina. This claim is belied by the record. The plaintiff made written and oral communications to the two housing Authorities, in which he made false statements concerning the condition of the dwelling and urged the housing authorities to cease paying rent. Counterclaim ¶¶ 55, 60. The

---

contract by falsely representing the condition of the defendant's property and, without authority, ordering that tenants stop paying rent to the defendant.

[4] They were vacated a short time later, on or about October 15, 2004.

13

communications were initiated by the plaintiff and were repeated on numerous occasions. Under these circumstances, it is reasonable to infer that Mr. Brett knew about the existence of the contracts when he induced the housing authorities to breach the same.

### iii. Impropriety

The plaintiff next argues that "nothing contained in the communications to the housing authorities was improper." Memorandum at 12. The plaintiff also argues that the communications to the housing authorities "contain no express or implied effort urging the housing authorities to breach their contract," Memorandum at 16, alleges that "is a gross mischaracterization to say that Mr. Brett issued an order" to stop payment of rent, Memorandum at 15, and evinces an intent to "prove" that the municipal counsel never represented the Beverly Housing Authority or the defendant's tenants and the plaintiff's behest. Memorandum at 16.[5]

These are factual disagreements that go to the heart of the controversy. It is wholly improper for the plaintiff to argue with the facts contained in the pleading. The defendant alleges that on numerous occasions the plaintiff falsely stated that her dwelling was in violation of the Building Code and a local zoning-by-law in various communications. Counterclaim ¶¶ 25-35, 52-62. The defendant alleges that the plaintiff had no authority to order her tenants to either vacate the premises or stop paying rent. Counterclaim ¶¶ 32, 35. Finally, the defendant alleges that the defendant had either no authority or no lawful reason to turn off utilities to the premises, post notices of "condemnation" on the premises, request that the police department remove the defendant from her property and file criminal charges against her, and supply the defendant's

---

[5] The plaintiff also claims that "Mr. Brett is not alleged to have played any role in Ms. Temkina's ejection from the property by the police." Memorandum at 16. This statement mischaracterizes the pleading. The counterclaim states that upon ejecting Ms. Temkina from her property, Officer Hatfield stated "the building inspector has told you that you are not allowed on this property." Counterclaim ¶ 78. The counterclaim also alleges that the plaintiff stated that he intended to utilize the police department to harass and intimidate the defendant, prevent her from renting her home and drive her out of the Town of Hamilton. Counterclaim ¶ 23. It is reasonable to infer that the plaintiff played a role in the defendant's ejection.

14

tenants with legal representation by its own municipal counsel after the defendant sued them for back rent, or file the instant action. Counterclaim ¶¶ 37, 46, 63-65, 67, 69, 76-77. Despite the plaintiff's argument over the facts and his mischaracterizations of the defendant's pleading, the defendant has stated the element of impropriety.

Consequently, the defendant has stated a claim of tortuous interference with advantageous business relations.

### B. MALICIOUS PROSECUTION

Plaintiff alleges that "there is no allegation that [the plaintiff] had any involvement in the institution of criminal proceedings against Ms. Temkina" for breaking and entering into her own house, as a result of her entry onto her property with a plumber to conduct repairs. Memorandum at 13. This assertion is inaccurate. The counterclaim alleges that the plaintiff stated that he intended to utilize the police department to harass and intimidate the defendant, prevent her from renting her home and drive her out of the Town of Hamilton. Counterclaim ¶ 23. Viewed in the context of the pleading as a whole, and it is reasonable to infer that the plaintiff was "involved" in the decision to bring breaking and entering charges against the defendant for entering her own property. Even if the allegations are insufficient to state a claim, the defect may easily be cured by an amendment to the pleading.

### C. ABUSE OF PROCESS

The defendant may state an abuse of process where she alleges that plaintiff (1) used process; (2) for an ulterior or illegitimate purpose; (3) and this use resulted in damage. *Adams v. Whitman*, 62 Mass.App.Ct. 850 (2005).

Plaintiff alleges that the defendant has failed to a state an abuse of process claim because (a) the plaintiff had no ulterior, illegitimate motive; and (b) even if he did have such a motive,

15

the plaintiff availed himself of the process for the very purpose for which it was intended. Memorandum at 13-14. The facts of the counterclaim, construed in the light most favorable to the defendant, belie both propositions.

Defendant alleges that the plaintiff "had no legitimate reason to file the [instant] complaint" against her because "he knew that the defects alleged in his August 19, 2004 letter, and which served as the basis for his complaint, were not present. [Plaintiff] also knew that 521 Bridge Street, South Hamilton was occupied by one household, and thus was not in violation of the by-law limiting the occupancy of single family dwellings." Counterclaim ¶ 67. The pleading manifestly alleges that the plaintiff did not avail himself of legal process for the very purposes it was intended.

Moreover, the counterclaim clearly states the plaintiff's ulterior or illegitimate motive. The counterclaim recites the defendant's allegations of anti-Semitism, her discrimination complaint against the Town, and alleges that the plaintiff's motive was retaliation. Counterclaim ¶¶ 6-23. The counterclaim alleges that the plaintiff organized meetings where he "announced his intention to utilize...the enforcement of local ordinances to harass and intimidate [the defendant] prevent [her] from renting their home, and drive [her] out of the Town of Hamilton." Counterclaim ¶ 23.

### D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff alleges that the plaintiff's behavior does not rise to the level of "extreme and outrageous conduct." Memorandum at 16. As noted supra, most of the plaintiff's argument consists of challenges to the factual assertions of the defendant's counterclaim. This is highly improper. The defendant's counterclaim more than supports the proposition that plaintiff's conduct was extreme and outrageous. The improper termination of utilities to an occupied home,

Counterclaim ¶ 63-65, the unlawful posting of condemnation notices on a dwelling, Counterclaim ¶ 36-38, and the use of the police department to unlawfully eject a property owner from her own property, Counterclaim ¶ 71-78, are epitomes of extreme and outrageous conduct.

### E. DEFENDANT HAS STATED A NEGLIGENCE CLAIM AGAINST THE TOWN OF HAMILTON

Plaintiff Brett and Defendant-in-Counterclaim Town of Hamilton allege that the defendant "does not allege any negligent conduct by anyone for whom the Town of Hamilton could be responsible." Memorandum at 16-17. Plaintiff mischaracterizes the defendant's counterclaim. In fact, defendant alleges, in the alternative to her tort claims, that actions undertaken by Mr. Brett --and others at his behest, including the Police Department, Board of Health and Water Department officials-- constituted negligent conduct. Such conduct included failing to maintain water service to the plaintiff's property, Counterclaim ¶¶ 63-65, 119, failing to reasonably assist the defendant in police emergencies, Counterclaim ¶¶ 39-51, 119, and refraining from unlawfully ejecting the defendant from her property. Counterclaim ¶¶ 71-78, 119. Consequently, defendant has stated a claim against the Town of Hamilton pursuant to the Massachusetts Tort Claims Act, G.L. c. 258 § 1, et seq.

### VI. SUPPLEMENTAL JURISDICTION AND STATE LAW CLAIMS

The plaintiff Brett and the defendant-in-counterclaim Town of Hamilton move to dismiss the defendant's counterclaim on a cornucopia of grounds: that the federal claims "lack substantial merit," the "factual allegations of the counterclaim extend far beyond the original complaint," and "judicial economy and fairness" warrants dismissal. Memorandum at 17. This argument is in error.

The defendant need not rely on supplemental jurisdiction for her state law counterclaim; she may also file state law claims against the plaintiff Brett and the defendant-in-counterclaim Town of Hamilton before this court under diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

Nevertheless, the court has supplemental jurisdiction over the state law claims. All of the matters in dispute "form part of the same case or controversy." 28 U.S.C. § 1367(a). The state-law claims arise from the "same nucleus of operative fact" as both the federal claims[6] and the Brett's claims against the defendant. The parties are identical.[7] There is nothing "straightforward" about Brett's complaint against the defendant. That action is merely the culmination of a pattern of harassment and intimidation that is at the heart of the defendant's counterclaim. The defendant's counterclaim alleges that the plaintiff, in retaliation for the defendant's filing of a discrimination complaint, took a variety of actions against the plaintiff without lawful authority and valid reason. The plaintiff's claim alleges that the defendant breached an ordinance and a regulation, and the plaintiff asserts that this violation entitled him to act in the manner that he did. It is clear that the federal claims do not "lack substantial merit." Nor does "judicial economy and fairness" mandate a dismissal. While some additional witnesses may be called in support of the counterclaim, many of the witnesses would be relevant to both actions, and all of the witnesses relevant to the federal claims would be relevant to the state claims.

---

[6] *See, e.g.*, Roche v. John Hancock Mutual Life Insurance Co., 81 F.3d 249 (1st Cir. 1996) (where the state law claims arise out of the same nucleus of operative facts as the section 1983 claims, compulsory jurisdiction is appropriate).

[7] With the exception of the joinder of the plaintiff's employer, the Town of Hamilton, as a defendant-in-counterclaim.

18

Dated: December 3, 2005

DEFENDANT/PLAINTIFF-IN-COUNTERCLAIM,

*Irina Temkina* (signature)

Irina V. Temkina
125 Neck Road
Old Lyme, CT 06371
(860) 597-3020 (telephone/facsimile)
irina.temkina@uconn.edu

## CERTIFICATE OF SERVICE

This certifies that a copy of the above Opposition was sent via first class mail, postage prepaid, to Charles Brett's counsel, Donna Brewer MacKenna, Casner & Edwards, 303 Congress Street, Boston, MA 02210 and Town of Hamilton's counsel, Leonard H. Kesten, Brody, Hardoon, Perkins & Kesten, One Exeter Plaza, Boston, Massachusetts 02116, on December 3, 2005.

*Irina Temkina* (signature)
Irina V. Temkina