UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11542-RGS

CHARLES BRETT, BUILDING
INSPECTOR OF TOWN OF HAMILTON

v.

IRINA V. TEMKINA

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

January 23, 2006

STEARNS, D.J.

This enforcement action was brought by Charles Brett, the Town of Hamilton Building Inspector, pursuant to the state building code and the Town's zoning by-laws. Brett alleges that the defendant Irina V. Temkina is illegally maintaining a multiple family rental property at 521 Bridge Street in Hamilton in violation of the Town's single family residence restriction. Filed originally in the Essex County Superior Court, Temkina, acting *pro se*, removed the case to federal court based on diversity jurisdiction (Temkina is a resident of Connecticut). She then moved to dismiss the Complaint. After her motion was denied, she filed an answer asserting the counterclaims that are the subject of the present motion to dismiss. The counterclaims consists of eight separate causes of action, three based on federal constitutional or statutory law and five on state common law. Brett maintains that Temkina has failed to state any valid claim. See Fed. R. Civ. P. 12(b)(6). For reasons that will be explained, the motion to dismiss the counterclaims will be ALLOWED.

BACKGROUND

Temkina is the owner of record of residential property at 521 Bridge Street in Hamilton (the property). In August of 2004, Brett was summoned to the property by Hamilton police who had responded to a report of a breach of the peace. Brett observed that the upper and lower levels of the house had been divided into separate rental units in violation of the Town's single family zoning restriction. Brett also observed apparent violations of the state building code.

In early 2005, Brett obtained copies of the leases entered by Temkina for the two rental units.[1] He then commenced an enforcement action in the Superior Court, which Temkina then removed. Temkina's counterclaims assert the following causes of action: Count I - tortious interference with advantageous business relations; Count II - violation of the Fifth Amendment of the U.S. Constitution; Count III - violation of U.S. Constitution, Article I, § 10; Count IV - violation of 42 U.S.C. § 1983; Count V - malicious prosecution; Count VI - abuse of process; Count VII - intentional infliction of emotional distress; and Count VIII - negligence. In support of these claims, Temkina alleges that in 1998 her son, Elliot Tiomkin, was the victim of an anti-Semitic slur by a teacher at the Hamilton-Wenham Regional High School. Temkina contends that Tiomkin was suspended from the high school for two weeks in retaliation for complaining about the incident. Temkina filed a charge with the Massachusetts Commission Against Discrimination (MCAD) in 2000. Temkina alleges that Brett is engaged in a campaign of retaliation against her for filing the MCAD complaint. Brett is alleged to have stated that he would use the police department

---

[1] The upper level of the property was rented to Shawn and Rhonda Baker. The lower level was rented to Matthew Carter.

and Town ordinances to drive Temkina and Tiomkin out of the community.

In paragraph 82 of her counterclaim, Temkina accuses Brett of the following acts of harassment:

(1) sending communications to Temkina's tenants ordering them to stop paying rent;
(2) posting a notice of condemnation on the property;
(3) filing a baseless application for a criminal complaint;
(4) communicating false information to the North Andover Housing Authority and encouraging it to repudiate its contract with Temkina;
(5) communicating false information to the Beverly Housing Authority and encouraging it to repudiate its contract with Temkina;
(6) threatening to turn off the utilities and actually terminating the water service;
(7) filing the instant lawsuit;
(8) utilizing municipal counsel to represent the Beverly Housing Authority and Temkina's tenant in the Housing Court;
(9) having the police eject Temkina from the property; and
(10) otherwise harassing and intimidating Temkina and interfering with her ability to rent the property.

Brett moves to dismiss the counterclaims asserting that the supporting allegations "go far beyond the factual and legal predicates of the plaintiff's complaint." Brett also contends that Temkina lacks factual support for the critical elements of her many claims.

## DISCUSSION

A claim will be dismissed if it appears beyond doubt that the claimant cannot prove facts to support any theory of recovery. Tamburello v. Comm-Tract Corp. 67 F.3d 973, 975 (1st Cir. 1995). The court must accept all well-pled factual allegations of the counterclaim as true and draw reasonable inferences in favor of the proponent. Aybar v. Crispin-Reyes, 118 F.3d 10, 13 (1st Cir. 1997). The plaintiff-in-counterclaim must at a minimum set forth factual allegations as to each necessary element to support a recovery under some actionable legal theory. Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991). "[B]ald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright

vituperation" will not defeat a motion to dismiss. Id. quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir.1990).

### The Federal Claims

Temkina alleges that as a result of Brett's actions, she has been deprived of her property without just compensation and has suffered an economic loss, in violation of the Fifth Amendment to the United States Constitution (Count II). To state a deprivation of property claim under the Fifth Amendment, the claimant must allege a taking by the federal government. See City of Boston v. Massachusetts Port Authority, 320 F. Supp. 1317, 1319 (D. Mass. 1971). Temkina makes no such allegation (nor could she). Temkina's allegation that the Town's actions have caused her property "to significantly diminish in value" resulting in "significant economic impact," also fails to state a claim for a taking under the Fifth and Fourteenth Amendments. A compensable taking may occur when governmental action deprives an owner of her interest in her property by prohibiting its use for virtually any economically beneficial purpose. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1019 (1992). Cf. Daddario v. Cape Cod Comm'n, 425 Mass. 411, 416-417 (1997) (a regulation that deprives an owner of a property's *most* beneficial use is not a taking if *some* beneficial use survives). Zoning laws are a classical example of "permissible governmental action even when prohibiting the most beneficial use of the property." Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 125 (1978). Temkina at most can argue that but for the single family restriction in the Town's zoning by-law, she could derive more income from her property by renting it out to multiple tenants. She cannot argue that by restricting tenancies to one family per residence, the Town has deprived her (or other

property owners) of all beneficial use of privately owned property.  Consequently, Count II of the Counterclaim will be dismissed.

Count III of the counterclaim, which alleges in general terms a violation of Article I, § 10 of the U.S. Constitution, fails to specify which clause of § 10 might be implicated by the Town's actions.  "While a pro se complaint is held to less stringent standards than one drafted by an attorney, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), 'courts need not conjure up unpleaded facts to support . . . conclusory (allegations).'"  Hurney v. Carver, 602 F.2d 993, 995 (1st Cir. 1979), quoting Slotnick v. Striviskey, 560 F.2d 31, 33 (1st Cir. 1977). As Temkina has failed to specify her § 10 claim or plead supporting facts, Count III will also be dismissed.[2]

Temkina's final federal claim, which alleges a violation of 42 U.S.C. § 1983 (Count IV), is based on the allegation that Brett undertook enforcement actions against Temkina in retaliation for her having "fil[ed] a discrimination complaint with the MCAD . . . ."  As to this claim, Brett invokes the defense of qualified immunity.  In a § 1983 civil rights case, government officials sued in their individual capacities are protected under the "qualified immunity" doctrine.[3]  In considering a qualified immunity defense, a "court must first

---

[2] The court surmises that Temkina seeks to invoke the impairment of contracts clause.  Art. I, § 10 applies only to the legislative power and not to decisions of courts or the acts of the executive and its agencies.  New Orleans Waterworks Co. v. Louisiana Sugar Refining Co., 125 U.S. 18, 30 (1888).  The clause also applies only to laws with retrospective rather than prospective effect.  Ogden v. Saunders, 25 U.S. 213, 216 (1827).  See Liability Investigative Fund Effort, Inc. v. Massachusetts Medical Professional Ins. Ass'n., 418 Mass. 436, 442 (1994).

[3] "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

5

determine whether the plaintiff has alleged a deprivation of an actual constitutional right at all." Conn v. Gabbert, 526 U.S. 286, 290 (1999). Only if a violation is found does the court proceed to answer the two remaining questions: was the right clearly established when the plaintiff suffered the constitutional injury; and if so, "whether a reasonable official, situated similarly to the defendant(s), would have understood that the conduct at issue contravened the clearly established law." Temkina has not pled any knowledge on Brett's part of the MCAD complaint she filed against the school district in May of 2000. Hence any theory that Brett sought to unlawfully punish her for seeking an official redress of her grievances against school officials cannot be sustained. Because no viable constitutional violation has been pled, Count IV will also be dismissed.[4]

The remaining five counterclaim counts assert violations of state common law that are related in only the most tangential sense to the zoning enforcement action. Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). A court may exercise ancillary jurisdiction where claims and counterclaims "derive from a common nucleus of operative

---

known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994) ("[T]he relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct."). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

[4]The Town is not a proper substitute defendant under the § 1983 claim because municipal liability under the statute cannot be based on a theory of *respondeat superior*. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691 (1978).

fact" or "are such that . . . would ordinarily be expected to [be] tr[ied] . . . in one judicial proceeding." Id. at 725.  But "[o]nly compulsory counterclaims can rely upon supplemental jurisdiction; permissive counterclaims require their own jurisdictional basis." Igleasias v. Mut. Life Ins. Co. of N.Y., 156 F.3d 237, 241 (1st Cir. 1998).[5]  Temkina's state law counterclaims fall within the classical Rule 13 permissive category. The factual allegations (to the extent pled) are not derived from the core events giving rise to the Complaint but instead from its collateral consequences and the motivation of Brett and other Town officials to enforce the zoning bylaw in Temkina's case.  A claim qualifies as compulsory only "if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 250 (1st Cir. 1982) quoting Revere Copper & Brass Inc. v. Aetna Casualty & Surety Co., 426 F.2d 709, 715 (5th Cir. 1970). Even where pendent jurisdiction may provide an independent jurisdictional basis for a permissive state law counterclaim, it is well within the discretion of a federal court to decline to take jurisdiction.   Because the counterclaims alleged by Temkina would predominate over the straightforward zoning-related matters alleged in the Complaint, the

---

[5]"There are at least four tests to determine whether a counterclaim is compulsory or permissive: (1) Are the issues of fact and law raised by the claim and counterclaim largely the same?  (2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?  (3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?  (4) Is there any logical relation between the claim and the counterclaim? Iglesias,156 F.3d at 241.

7

court will exercise its discretion and decline jurisdiction.[6] Carnegie-Mellon University v. Cahill, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.").

## ORDER

For the foregoing reasons, the motion to dismiss the counterclaims is ALLOWED.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[6]To the extent Temkina believes that she has a viable state law case, she is free to pursue it in state court. It must be recalled that the decision to remove the case to federal court was Temkina's in the first instance.